#### FOR THE

## COUNTIES OF FRANKLIN AND HAMPSHIRE, AT GREENFIELD, SEPTEMBER TERM, 1867.

PRESENT:

HON. GEORGE T. BIGELOW, CHIEF JUSTICE.
HON. EBENEZER R. HOAR,
HON. REUBEN A. CHAPMAN,
HON. HORACE GRAY, JR.,      } JUSTICES.
HON. DWIGHT FOSTER,

## FRANKLIN COUNTY.

### COMMONWEALTH *vs.* LUCIUS H. TENNEY.

The words " incorporated bank " in Gen. Sts. c. 161, § 39, include banks chartered since the passage of that act as well as those then existing, and include banking corporations organized under the laws of the United States and located in Massachusetts, as well as like corporations created by the laws of the Commonwealth.

The offence of fraudulent conversion, by an officer or person in the employment of a bank incorporated under the laws of the United States and located in Massachusetts, of property of individuals deposited in such bank, is not punishable under any existing law of the United States, and the courts of the Commonwealth have jurisdiction thereof under Gen. Sts. c. 161, § 39.

An acquittal on a former indictment for larceny of certain bonds is not a bar to conviction on an indictment under Gen. Sts. c. 161, § 39, for fraudulent conversion of the same bonds, if it does not appear in the pleadings or in evidence at the trial on the second indictment that the defendant was not intrusted with the custody of them.

The taking by a person in the employment of an incorporated bank from their place of de

posit in such bank of the bonds of a depositor and sending of them out of the Common-wealth to be used as collateral security for the taker's own debt, is a fraudulent conversion, within the meaning of Gen. Sts. ⸱. 161, § 39, although at the time of the taking he expected and intended to restore them to the bank or to the depositor before it should be discovered that they were missing, and in the identical form and condition in which he took them.

INDICTMENT under Gen. Sts. *c.* 161, § 39, which is as follows : " If an officer of an incorporated bank, or any person in the employment of such bank, fraudulently converts to his own use, or fraudulently takes and secretes, with intent so to do, any bullion, money, note, bill, or other security for money, belonging to and in possession of such bank, or belonging to any person and deposited therein, he shall, whether intrusted with the custody thereof or not, be deemed guilty of larceny in said bank, and be punished," &c. It set forth that the defendant, at Greenfield, on March 1, 1866, " then and there being a clerk of the First National Bank of Greenfield, a corporation then and there duly and legally established, located, organized and existing in said Greenfield under and by virtue of the laws of the United States," " did, whilst he, the said Lucius H. Tenney, was so in the employment of the said bank as aforesaid, feloniously and fraudulently convert to his, the said Lucius H. Tenney's, own use nine bonds issued by the United States," " each of the value of one thousand dollars, all of the property of one Jonathan S. Purple, all the said bonds then and there being deposited in the said bank in the banking-house thereof situated in said Greenfield, whereby and by force of the statute in such case made and provided, the said Lucius H. Tenney is deemed to have committed the crime of larceny in said bank," " and so " " that the said Lucius H. Tenney then and there in manner and form aforesaid the said bonds " " feloniously did steal, take, and carry away, in the banking-house aforesaid." There was also a count for a similar fraudulent conversion of a bond of the property of Davis Goddard.

At the trial in the superior court, before *Morton*, J., at March term 1867 for Franklin, the defendant filed a special plea in bar, alleging that he had been lawfully acquitted of the same offence set forth in this indictment, and he annexed to his plea a copy

of a record by which it appeared that, at November term **1866** of that court for the same county, he was arraigned, tried and acquitted on an indictment for larceny of the same bonds. To this special plea in bar the attorney for the Commonwealth filed a demurrer, which the judge sustained, whereupon the defendant entered a plea of not guilty.

The attorney for the Commonwealth offered as evidence of the organization of the " First National Bank of Greenfield " as a corporation under the laws of the United States, a certificate signed by the comptroller of the currency of the United States, and sealed with his seal of office, under date of July 2, 1864, setting forth that " whereas, by satisfactory evidence presented to the undersigned, it has been made to appear that the First National Bank of Greenfield, in the town of Greenfield, in the county of Franklin, and state of Massachusetts, has been duly organized under and according to the requirements of the act of congress, entitled ' an act to provide a national currency secured by a pledge of United States bonds, and to provide for the circulation and redemption thereof,' approved June 3, 1864, and has complied with all the provisions of said act required to be complied with before commencing the business of banking under said act; now, therefore, I, Hugh McCulloch, comptroller of the currency, do hereby certify that the First National Bank of Greenfield, in the town of Greenfield in the county of Franklin and state of Massachusetts, is authorized to commence the business of banking, under the act aforesaid." He introduced also a copy, attested by the comptroller of the currency under his seal of office, of the " organization-certificate " of the bank, filed and recorded in the comptroller's office, dated June 23, 1864, signed and acknowledged before a notary public by the five directors of the " Greenfield Bank," setting forth that they, " having been duly authorized by the owners of two thirds of the capital stock of said bank to change said bank into an association and to make the necessary organization-certificate under the provisions of the forty-fourth section of the act of congress " above described, did certify, first, the name of the proposed new association ; second, its location and place of business ; third

the amount of its capital stock and the number and par value of the shares; fourth, the name, residence and number of shares of each stockholder; and fifth, that " this certificate is made in order that the said Greenfield Bank and the stockholders thereof may avail themselves of the advantages of the aforesaid act, and that the said Greenfield Bank may be changed and converted into a national banking association under the name and title of the First National Bank of Greenfield."

There was also evidence at the trial tending to show that during the year 1866, while in the employment of the bank as clerk, the defendant took the bonds from their place of deposit in the bank and sent them to New York, as collateral security for advances made by certain brokers in that city for the purpose of speculation in stocks, but with the understanding that these brokers were not to sell or dispose of them ; and that the defendant intended at the time to restore the bonds to the bank before it should be discovered that they were missing, but that some of them were afterwards sold by the brokers to cover losses incurred in the speculations, and were never restored to the bank or to Purple or Goddard.

Upon this evidence the defendant requested the judge to instruct the jury, that the law upon which the indictment was founded is not applicable to a national bank duly organized under the laws of the United States; that there was no legal and sufficient evidence of a corporation duly organized and established ; and that if the intention of the defendant was to use the bonds as collateral security for a period and then to restore them to the owners or to the bank in the identical form and condition in which they were taken, the crime charged in the indictment was not proved.

The judge declined to give the instructions requested, and did instruct the jury that the law upon which the indictment was founded is applicable to a national bank duly organized under the laws of the United States ; that there was evidence upon which it was competent for them to find that the bank was duly organized and established ; and that, if the defendant fraudulently took the bonds and sent them to the brokers in New York

in the manner and for the purposes stated, it was a fraudulent conversion under the statute, notwithstanding that he expected and intended to restore them to the bank or to the owners before it should be discovered that they were missing.

The defendant was found guilty, and moved in arrest of judgment, alleging that the court had no jurisdiction of the offence charged in the indictment; but the judge overruled his motion.

To all these rulings the defendant alleged exceptions.

*D. Aiken & S. O. Lamb,* for the defendant. 1. The offence charged is included among those mentioned in U. S. St. 1864, *c.* 106, § 55, and falls within the exclusive cognizance of the federal courts. U. S. St. 1789, *c.* 20, § 11. *Commonwealth* v. *Fuller,* 8 Met. 313. *Commonwealth* v. *Peters,* 12 Met. 387. 2. The former acquittal was well pleaded. The question is whether the evidence necessary to support the second indictment would have been sufficient to procure a legal conviction upon the first. Archb. Crim. Proc. (Waterman's ed.) 111, note. *Commonwealth* v. *Curtis,* Thach. Crim. Cas. 202. *Commonwealth* v. *Bubser,* 14 Gray, 83. The second indictment contains all averments necessary to charge larceny at common law. The Gen. Sts. *c.* 161, § 39, divide the persons subject to the penalty into two classes, those who sustain a fiduciary relation to the bank, and those who do not. " Fraudulent conversion," in the words of the statute, as applicable to those not " intrusted with the custody," &c., means larceny, for embezzlement applies only to those so intrusted. 3 Chit. Crim. Law, 921. 2 Bish. Crim. Law § 284. If it was intended to charge the defendant as bailee, the indictment should have set forth the relation. *Commonwealth* v. *Simpson,* 9 Met. 138. Being " in the employment " of a bank as a clerk does not import custody of property beyond the books necessary to his employment. 2 Bish. Crim. Law, §§ 722, 730. The indictment alleges the bonds to be the property of Purple and Goddard; they retained the legal and constructive possession of them; the bank had the actual possession as bailee; and the defendant, if guilty, is guilty of larceny for the conversion *Commonwealth* v. *Brown,* 4 Mass. 580. *Commonwealth* v. *James*

1 Pick. 375. *Commonwealth* v. *Doane*, 1 Cush. 5. Rosc. Crim Ev. 601. 2 Russell on Crimes, 21, 24, 153. *Commonwealth* v. *Hays*, 14 Gray, 62. Counts for larceny and embezzlement may be joined; 3 Chit. Crim. Law, 921; 2 Russell on Crimes, 213; and the defendant might well have been convicted of larceny on this indictment, had the government failed to prove statutory embezzlement. St. 14 & 15 Vic. *c.* 100, § 13. Archb. Crim. Proc. (Waterman's ed.) 458. 2 Bish. Crim. Law, § 284, note. *Commonwealth* v. *Squire*, 1 Met. 258. 3. Fraudulent intent is material to the offence, and is a question for the jury. *Commonwealth* v. *Tuckerman*, 10 Gray, 202. The judge erred in giving the jury to understand that the defendant might be guilty although he intended to use the bonds only for a temporary purpose and restore them to the owner in the identical form and condition in which they were taken. *Commonwealth* v. *Tuckerman*, 10 Gray, 206.

*C. Allen*, Attorney General, for the Commonwealth. 1. The U. S. St. of 1864, *c.* 106, provides a punishment for embezzling funds of banking institutions, but none for embezzling funds of individuals deposited therein. The offence charged in this indictment is not punishable under any law of the United States. 2. On a plea of former acquittal the test is, can the second indictment be maintained by proof of fewer facts than the first? If so, the former acquittal is no bar. *Commonwealth* v. *Roby*, 12 Pick. 496. *Commonwealth* v. *Clair*, 7 Allen, 525. For conviction on the former indictment for larceny it was necessary to prove that the bonds were not in the defendant's possession, and that he intended to deprive the owners of them permanently, neither of which needs to be proved to convict on this indictment. *Commonwealth* v. *Simpson*, 9 Met. 138. *Commonwealth* v. *King*, 9 Cush. 284. *Commonwealth* v. *Collins*, 12 Allen, 181. *Regina* v. *Gorbutt*, Dearsly & Bell, 166. Therefore the defendant's plea in bar was rightly overruled. *Regina* v. *Henderson*, Car. & Marshm. 328. 3. The charge in the second indictment is not larceny, but fraudulent conversion. To sustain this it is enough to show a temporary appropriation which is fraudulent. But even if a stricter degree of proof than this is necessary, the

defendant, having pledged the bonds as collateral security, must be held to have licensed the pledgee under certain contingencies to make his possession absolute, and to have contemplated and intended that among the other natural consequences of his act. *Regina* v. *Phetheon*, 9 C. & P. 552. *Commonwealth* v *Hackett*, 2 Allen, 141, 142. *Commonwealth* v. *Starr*, 4 Allen, 304. 3 Greenl. Ev. § 14.

FOSTER, J. This indictment is founded on Gen. Sts. *c.* 161, § 39, within the provisions of which, we have no doubt, national banks, created under the laws of the United States, must be held to be included. The words "incorporated bank" are broad enough to embrace not only banks existing at the date of the passage of the act, but such as have been chartered since; and they are not limited to corporations created by the laws of Massachusetts, but likewise include such national banking corporations as are located within this Commonwealth, if the offence to be punished is here committed.

The further objection is made, that the courts of the United States are vested by the judiciary act of September 24, 1789, (U. S. St. 1789, *c.* 20, § 11) with exclusive cognizance of all crimes cognizable under the authority of the United States, except where it is otherwise provided by the acts of congress. But an examination of the statutes of the United States leads us to the conclusion that the offence charged in this indictment has not been made punishable by any act of congress. The enactments cited on behalf of the defendant punish the embezzlement of the property of national banks, but not of the property of individuals, deposited with and in the custody of such banks. U. S. St. 1863, *c.* 58, § 52. U. S. St. 1864, *c.* 106, § 55. As the federal courts have no criminal jurisdiction except that conferred by congress, no question can be made as to the constitutionality of state legislation punishing such frauds, until they have been made punishable by the federal laws. There is no view of the relative, or of the concurrent powers of the two governments, which affects the decision of the present case; for all courts and jurists agree that state sovereignty remains unabridged for the punishment of all crimes committed within the

limits of a state, except so far as they have been brought within the sphere of federal jurisdiction by the penal laws of the United States. *Commonwealth* v. *Fuller*, 8 Met. 313. *Commonwealth* v. *Peters*, 12 Met. 387.

The objection that the First National Bank of Greenfield had not been duly organized as a corporation was not insisted upon at the argument, and, so far as we can judge from the evidence reported, appears to have no foundation.

The defendant pleaded in bar a former acquittal, which plea was overruled upon the demurrer of the government, and the correctness of that decision is before us for revision. An inspec tion of the record in the former case shows that it was a simple common law indictment for larceny of the same bonds, the felonious and fraudulent conversion of which is charged in the case at bar. The present indictment follows the words of the statute upon which it is framed, which describe the whole offence. This is ordinarily sufficient, and is not now objected to as defective. It does not allege whether the defendant was intrusted with the possession of the abstracted property or not, and by the express language of the section this is immaterial. The guilt and punishment of an officer of a bank, or a person employed in it, who fraudulently converts to his own use the property of any person deposited in the bank, is made the same, whether he was or was not entrusted with the custody thereof. In either case such an act is " to be deemed a larceny." But this language does not make the act indictable as a larceny if it were not so before. It is a statute offence, and must be charged as such. *Commonwealth* v. *Simpson*, 9 Met. 138. *Commonwealth* v. *King*, 9 Cush. 284. Under the first indictment, the defendant might probably have been found guilty of a common law larceny, if he had not been intrusted with the possession of the property. At all events, this may be assumed for the purposes of the present discussion. But proof that he was intrusted with the property would have defeated the first indictment. It does not appear whether the evidence at the trial of the present case showed that he was or was not intrusted with the custody of the property taken. If the ground on which a conviction was claimed was that of lar-

ceny, and it appeared that the property abstracted was not intrusted to the custody of the defendant, the record of a former acquittal might perhaps have been introduced as conclusive evidence in his favor. But it was not offered in evidence. And it is impossible to sustain a plea of *autrefois acquit* where, by a comparison of the two records, it appears that the two indictments are in point of law for distinct offences. 1 Stark. Crim. Pl. 322 *et seq.* *Commonwealth* v. *Roby*, 12 Pick. 496. *Commonwealth* v. *Clair*, 7 Allen, 525. In the present case the plea does not answer the indictment, but only one aspect of the evidence by which it may have been supported. The allegations constituting the statute offence may all be sustained by facts not amounting to larceny.

Consequently the plea is insufficient, because it does not appear that the defendant was by the former indictment put in jeopardy for the same offence. This would have been entirely apparent if the present indictment alleged that the defendant, being a person in the employment of the bank, *and being intrusted with certain property*, &c., had fraudulently converted it to his own use. It then would have been manifest that a larceny was not charged and the former acquittal was no defence. Such may have been the reason for the previous acquittal and for the present conviction, in which case both verdicts are right. But if at the last trial the government proceeded on a state of facts amounting to mere larceny, and consequently covered by the first indictment, the defendant's only remedy was, as we have already stated, to introduce the former record in evidence. The peculiarity of the present case arises from the circumstance that the statute has been so framed that an indictment under it may be maintained upon either of two states of facts. We are satisfied that this provision was intentional, and designed by the legislature to prevent the escape of the guilty employee in a bank upon a doubt whether he ought to be convicted of larceny or embezzlement.

With reference to the fraudulent and felonious character of the acts proved, and their sufficiency to warrant a conviction we entertain no doubt. To take from their place of deposit the

bonds of a depositor, and send them out of the state to be used as collateral security for the defendant's own debt, was a fraudulent conversion.    Intention to restore the bonds, and the agreement of the party who received them not to sell or dispose of them, cannot do away with the criminal nature of the transaction.    A guilty intent is necessarily inferred from the voluntary commission of such an act, the inevitable effect of which is to deprive the true owner of his property and appropriate it to the defendant's own use.    Perhaps in a majority of cases the party who violates his trust in such a manner does not expect or intend that ultimate loss shall fall upon the person whose property he takes and misuses.    But no hope or expectation of replacing the funds abstracted can be admitted as an excuse before the law.    The forger who means to take up the forged paper, the thief who contemplates making eventual restitution, and the man who embezzles money or bonds with the design of restoring them, all fall under like condemnation in courts of justice and wherever the rules of sound morality are respected.

*Exceptions overruled.*