BRIDGEPORT (HART v.). See Case No. 6,149.

BRIDGEPORT The (SHAW v.). See Case No. 12,717.

BRIDGEPORT BRASS CO. (MILLER v.). See Case No. 9,563.

## Case No. 1,862.

### Ex parte BRIDGES.

### BROWN v. UNITED STATES.

[2 Woods, 428;[1] 2 Cent. Law J. 327, 368; 14 Am. Law Reg. (N. S.) 566, 576; 2 Am. Law T. Rep. (N. S.) 464, 474; 1 N. Y. Wkly. Dig. 347, 348; 21 Int. Rev. Rec. 214; 7 Chi. Leg. News, 306; 4 Am. Law. Rec. 132.]

Circuit Court, N. D. Georgia. May, 1875.
District Court, N. D. Georgia. April 10, 1875.

PERJURY—FEDERAL COURTS — JURISDICTION — OFFENSES AGAINST THE UNITED STATES — HABEAS CORPUS—CONFLICTS OF JURISDICTION — DEFINITION—"JUDICIAL PROCEEDING."

1. Perjury committed in the course of a judicial investigation, conducted under authority of acts of congress, is an offense against the

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

public justice of the United States, and is exclusively cognizable in the courts of the United States.

[Cited in Ex parte Houghton, 7 Fed. 664; Re Loney, 134 U. S. 376, 10 Sup. Ct. 586.]
[See Stearns v. U. S., Case No. 13,341; Ableman v. Booth, 21 How. (62 U. S.) 506; U. S. v. Robinson, Case No. 16,176.]

[2. "Judicial proceeding" in Code Ga. § 4660, defining perjury as false swearing, etc., in judicial proceedings, refers to judicial proceedings under the laws of the state.]

3. As a general rule of the common law, when it appears by the return to a writ of habeas corpus that the prisoner is confined upon a regular charge and commitment for a criminal offense, and especially if he be confined in execution after conviction, he will be at once returned to custody.

4. But this rule has been modified by several acts of congress, which are condensed into section 753, Rev. St., whereby the courts of the United States are authorized to issue the writ in behalf of any person restrained of his or her liberty in violation of the constitution or of any treaty or law of the United States.

[Cited in Re Bull, Case No. 2,119; Re Wong Yung Quy, 47 Fed. 721; Re Neagle, 135 U. S. 74, 10 Sup. Ct. 672.]

5. Therefore, a person who had been convicted in a state court for the offense mentioned in the first headnote, and was undergoing imprisonment in the penitentiary therefor, was discharged on habeas corpus issued from a court of the United States.

[Cited in Ex parte Kenyon, Case No. 7,720; Re Bull, Id. 2,119; Re Wong Yung Quy, 47 Fed. 719; Ex parte Royall, 117 U. S. 253, 6 Sup. Ct. 741; Re Loney, 38 Fed. 103.]
[See Ex parte Houghton, 8 Fed. 897.]

[6. Where an accusation by the United States authorities is pending against the petitioner for the same offense, the court may refuse to discharge him absolutely, and may recommit him to await the action of the federal grand jury.]

[Petition for a writ of habeas corpus by Brown on behalf of Dock Bridges. The petition set forth that Bridges was tried and convicted in the superior court of Randolph county upon an indictment for perjury, and was confined in the Georgia state penitentiary in execution of the sentence of the said court.]

[The indictment was as follows:

["Georgia, Randolph County, &c. The grand jury, &c., in the name and behalf of the citizens of Georgia, charge and accuse Dock Bridges (and four others) of the state aforesaid, of perjury:

["For that the said Dock Bridges, &c., on the 22d day of October, A. D. 1874, and in the county aforesaid, there being then and there pending and under legal investigation before L. A. Guild, a lawful commissioner of the United States, exercising and holding jurisdiction in said county and state, a charge against Nicholas Kinney, for a violation of the enforcement act, passed by the congress of the United States, and of force in said county and state, the said investigation being a proceeding under the execution of a warrant by D. C. Bancroft, deputy United States marshal, against said Nicholas Kinney, for the said offence of a violation of the enforcement act, and the said investigation being then and there a preliminary inquiry by L. A. Guild, United States commissioner, as aforesaid, to ascertain whether or not there existed probable cause for said charge against said Nicholas Kinney, then and there before the said L. A. Guild, who was then and there an officer aforesaid, lawfully authorized to administer an oath, who swore the said Dock Bridges, &c., as witnesses in the case aforesaid, the said witnesses then and there taking the oath upon the Holy Evangelists of Almighty God, and then and there, in the manner aforesaid swearing, did state under their oath as aforesaid, that the said Nicholas Kinney, in a threatening manner, and with a knife in hand, in the town of Dawson, of Terrell county, and said state, did attempt to prevent said Dock Bridges, &c., from voting, unless they should vote the Democratic ticket, at an election being held at the courthouse in the town of Dawson, of Terrell county, and said state, on the 7th day of October, A. D. 1874, for a member of the legislature to represent said county of Terrell in the general assembly of said state, which statement so sworn by said Dock Bridges, &c., was then and there material to the issue on trial in said case; whereas, in truth and in fact, the said Nicholas Kinney, on the said 7th day of October, in the year 1874, at said election being then and there held in the town of Dawson as aforesaid, did not, in a threatening manner, and with knife in hand, attempt in said town of Dawson to prevent the said Dock Bridges, &c., from voting at said election, unless they should vote the Democratic ticket; and the grand jurors aforesaid, on their oath aforesaid, do charge that the said Dock Bridges (and four others), on the said 22d day of October, A. D. 1874, and in the said county of Randolph, and in the manner aforesaid, did wilfully, knowingly, absolutely swear to the aforesaid false statement, contrary to the laws of said state, the good order, peace, and dignity thereof."][2]

[On return to the writ, the keeper of the state penitentiary produced the prisoner, but declined to surrender him, on the ground that the court had no jurisdiction, but that only the superior court of Randolph county could legally inquire into the cause of his detention, or discharge him from custody.

[The following is the opinion delivered in the district court:]

[2] [ERSKINE, District Judge. From the earliest period of the common law, no freeman could be detained in prison except upon a criminal charge, or civil action. In the former case, it was always in his power to demand of the supreme court of criminal jurisdiction in the kingdom, a habeas cor-

---

[2] [From 2 Cent. Law J. 328.]

pus, commanding the party restraining him to produce the body before the court, with the cause of detention, that it might inquire into its sufficiency, and either remand, bail or discharge the prisoner. This ancient barrier against oppression was, at Runnymede, built into that portion of the wall of the great charter which protects the personal liberty and property of all freemen, by giving security from arbitrary imprisonment and arbitrary spoliation. As is well established in legal history, this statute was confirmed many times by parliament. And it was tersely said by Sir Edward Coke, during the debate in the house of commons on the petition of right, "Magna Charta is such a fellow that he will have no sovereign." The very essence of the 29th chapter of the charter is, among other immunities from oppression, incorporated into the fifth article of amendment of the national constitution. The framers of the constitution, actively mindful of the value of this remedy, guaranteed its permanence by a provision in that instrument, that its privilege shall not be suspended, unless when, in cases of. rebellion or invasion, the public safety may require it. The judiciary act of 1789 [1 Stat. 81] provided that each of the several national courts, as well as either of the justices of the supreme court and district judges, should have power to grant the writ of habeas corpus, with the proviso, however, that it "shall, in no case, extend to persons in jail, unless where they are in custody under or by color of authority of the United States, or committed for trial before a court thereof, or are necessary to be brought into court to testify." And by the terms of the 7th section of the act of March 12th 1833 [Act March 2, 1833; 4 Stat. 634], it may be granted, in all cases of a prisoner in jail, when he shall be committed on, or by any authority of law, for any act done, or omitted to be done, in pursuance of a law of the United States, or any order, process or decree of any judge or court thereof. This was followed by the act of August 29th 1842 [5 Stat. 539], which concerns international law. To give greater vitality to the writ, and to extend its efficacy, congress passed the act of February 5th 1867 [14 Stat. 385]. The first section enacts: "That the several courts of the United States, and the several justices and judges of such courts, within their respective jurisdictions, in addition to the authority already conferred by law, shall have power to grant writs of habeas corpus in all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States; and it shall be lawful for such person so restrained of his or her liberty, to apply to either of said justices or judges for a writ of habeas corpus, which application shall be in writing, &c., * * * and the said justice or judge, to whom such application shall be made, shall forthwith award a writ of habeas corpus, unless it shall appear from the petition itself that the party is not deprived of his or her liberty in contravention of the constitution or laws of the United States. * * * * The said court or judge shall proceed in a summary way to determine the facts of the case by hearing testimony and the arguments of the parties interested; and if it shall appear that the petitioner is deprived of his or her liberty in contravention of the constitution or laws of the United States, he or she shall forthwith be discharged and set at liberty," &c. See Rev. St. U. S. §§ 751–766, where the various habeas corpus acts are grouped.

[The question for consideration is, to me, one of original impression, and it might have been determined elsewhere, and probably before now, had a different course been pursued in the state court; had the petitioner Bridges, on his arraignment there, demurred for want of jurisdiction appearing upon the record—that the offence charged was committed beyond the jurisdiction of that or any other court of this state, and within the jurisdiction of another government; or shown these facts in evidence under the plea of not guilty; or, on return of the verdict, moved in arrest of judgment; and, if in any of these instances, or on the overruling of his motion for a new trial, the decision was adverse to him, he could have carried his case to the state supreme court—a tribunal presided over by judges of distinguished ability—and if that court affirmed the judgment of the lower tribunal still he had the privilege to sue out a writ of error from the supreme court of the United States, and have the question re-examined there; but as a duty has presented itself, and as this duty has devolved upon me, it will be performed—performed, I trust, without marring the harmony, or weakening the ties of comity between the state and national judicial authorities. The judiciary power of every government can look beyond its own municipal laws in civil cases, and can take cognisance of all subjects of litigation between parties within its territorial limits and jurisdiction, though the controversy relate to the laws of a foreign country. But, as regards crime, the rule is otherwise; for the courts of one state or nation will not hold cognisance of, nor enforce the criminal laws of another. And as to crimes made so by legislative enactments, the government of the United States stands in the same relation to the government of this state as any foreign power. Mr. Justice Story, in giving the opinion of the supreme court, in Martin v. Hunter, 1 Wheat. [14 U. S.] 304, said: "No part of the criminal jurisdiction of the United States can, consistently with the constitution, be delegated to state tribunals."

[Thus it is manifest, that the state courts cannot hold criminal jurisdiction over offences exclusively existing as offences against the United States; for every crim-

inal prosecution must charge the crime to have been committed against the sovereign whose courts sit in judgment upon the offender, and whose authority can pardon him. In Com. v. Tenney, 97 Mass. 50, the supreme judicial court of Massachusetts, held that the offence of embezzlement, by a person in the employment of a national bank, located in that state, of the property of individuals deposited in such bank, not being punishable under any existing law of the United States, the state courts had jurisdiction thereof, under the state statutes. The court said: "There is no view of the relation of the concurrent power of the two governments, which affects the decision in the present case; for all courts and jurists agree that state sovereignty remains unabridged for the punishment of all crimes committed with the limits of a state, except so far as they have been brought within the sphere of federal jurisdiction, by the penal laws of the United States." The language of the court in that case admits neither of doubt nor comment. It indicates, in terms too significant to be misunderstood, that, had congress declared the act a crime, the state tribunals would have been altogether without jurisdiction over the offender. In State v. Adams, 4 Blackf. 146, the defendant was indicted for making a false affidavit of his being an actual settler on the public lands under the act of congress of April 5th 1832 [4 Stat. 503]. The court below quashed the indictment for want of jurisdiction, and, on error the state supreme court affirmed the judgment. Said Blackford, J., in delivering the opinion of the court: "We have a statute saying, that any person, who shall wilfully and falsely make an affidavit, &c., shall be deemed guilty of perjury. Rev. Code 1831, p. 186. And it is contended for the prosecution that the indictment before us is sustainable under that statute. But this doctrine cannot be supported. The affidavit was made under an act of congress relative to the sale of public land, and if the party making it committed perjury, he must be punished under the act of congress prohibiting the offence. The state courts have no jurisdiction." In the case of State v. Pike, 15 N. H. 83, the prisoner was indicted for perjury alleged to have been committed before a commissioner in bankruptcy, appointed by the district court of the United States, under the bankrupt act of 1841 [5 Stat. 440]. On demurrer to the indictment the supreme court of judicature gave judgment sustaining the demurrer. Parker, C. J., announcing the decision, said: "Here is another government whose laws are operative, to a certain extent, over the territory of the state, and having tribunals here competent to punish any offences committed against its laws, or in the course of any of its proceedings. The commissioners in bankruptcy not only derive no authority from this state, but they cannot be regarded as having exercised their offices by any permission, tacit or otherwise, from it. They derive their authority from a paramount law, and the state could not object to the exercise by them of the duties of their office within its limits, if it had the disposition so to do. The offence, if committed as alleged, is clearly a crime under the laws of the United States." Similar in almost every respect to the, preceding and former cases, is the recent one of People v. Kelly (1869) 38 Cal. 145. Kelly was indicted in a county court for perjury, committed by swearing falsely as to a settlement and cultivation of a tract of land—part of the public domain of the United States. The prisoner demurred, on the ground that the state court had no jurisdiction of the offence, because it was not committed in any court of the state. The demurrer was overruled, and the prisoner convicted. On appeal to the supreme court, it was there held that the demurrer should have been sustained. In giving the opinion of the court, Sawyer, C. J., said: "The state tribunals have no power to punish crimes against the laws of the United States, as such. The same act may, in some instances, be an offence against the laws of both, and it is only as an offence against the state laws that it can be punished by the state in any event." The supreme court of New York, in People v. Sweetman, 3 Parker, Cr. Rep. 358, on certiorari to the court of oyer and terminer, decided—reversing the conviction—that false swearing by a person in giving testimony in a proceeding of naturalization before a state court, is an offence against the United States, and is not punishable by a state court: because "the state court acted as the agent of the government, and was, pro hac vice, a tribunal of the United States." In direct conflict with People v. Sweetman, is Rump v. Com., 30 Pa. St. 475. Rump was convicted before the quarter sessions of Philadelphia, for having falsely and corruptly sworn before the district court of the city and county of Philadelphia, on an application of a party to become a citizen of the United States. On error to the quarter sessions, the supreme court of Pennsylvania affirmed the judgment.

[The act of congress of April 14th, 1802 (3 Stat. 153), empowers not only the circuit and district courts of the United States, and the territorial courts, but also state courts of record having common-law jurisdiction, a seal and clerk, to admit aliens to national citizenship. Congress has, under the eighth section of the first article of the constitution, plenary power to pass naturalization laws, and to bestow if it chooses upon state tribunals, authority, concurrent with the federal courts, to admit aliens to citizenship, in pursuance of the laws of congress; and when the state courts, under sanction of state authority (for they are under no obligation to furnish tribunals for administering those

laws), act upon the delegated authority, they, by the positive law, perform judicial functions. Prigg v. Pennsylvania, 16 Pet. [41 U. S.] 608. Adverting for a moment to the cases of State v. Adams, State v. Pike, People v. Kelly, People v. Sweetman, and Rump v. Com., supra, it will be seen, that in the first three, the alleged offences were committed before United States officers empowered by congress to administer oaths, and those state tribunals decided that they had no jurisdiction to punish the defendants. In the fourth case, the corrupt oath was made before a state tribunal, in a naturalization case, and, on certiorari to the criminal court, the supreme court of New York reversed the conviction, holding that the United States courts were the only tribunals that could punish the delinquent. Whether that case, or Rump v. Com., is in consonance with the nature and genius of our form of government—in unison with those principles of state and national criminal jurisprudence which accompany our complex and seemingly, but not really, permiscible system of polity—need not be resolved; for it is not a point in judgment. And for like reason, it is unnecessary, and indeed would be too curious, to inquire whether there could be a second punishment of the defendant in the Pennsylvania case, for the same identical act—first by the state laws and afterwards by the United States laws. Moore v. Illinois, 14 How. [55 U. S.] 13; Ex parte Lange, 18 Wall. [85 U. S.] 163. And see Mr. Bishop's learned and accurate Commentaries on Criminal Law (volume 1, 5th Ed.) §§ 178, 179, 984–989; Id. vol. 2, § 1023. See Jett v. Com. [18 Grat. 933].

[Within the territorial limits of the individual states, there exist two distinct and separate governments, each restricted in its sphere of action, and each independent of the other, except in one particular. "That particular," said Mr. Justice Field, in Tarble's Case, 13 Wall. [80 U. S.] 397, "consists of the supremacy of the authority of the United States, when any conflict arises between the two governments. The constitution and the laws passed in pursuance of it, are declared by the constitution itself to be the supreme law of the land, and the judges of every state are bound thereby, 'anything in the constitution or laws of any state to the contrary notwithstanding.' * * *" And after making a quotation from Ableman v. Booth, 21 How. [62 U. S.] 506, which concludes thus: "And that in the sphere of action assigned to it (the general government), it should be supreme, and strong enough to execute its own laws by its own tribunals, without interruption from a state, or from state authorities," he adds: "And the judicial power conferred extends to all cases arising under the constitution, and thus embraces every legislative act of congress, whether passed in pursuance of it or in disregard of its provisions. The constitution is

under the view of the tribunals of the United States when any act of congress is brought before them for consideration." Indeed it is essential to the very existence of the national government that its courts of justice should be wholly independent of state power to carry into effect its own laws.

The indictment charges the petitioner with having committed the crime of perjury against the laws of the state of Georgia, before L. A. Guild, a commissioner of the United States, lawfully authorized to administer an oath, in a preliminary investigation, on an accusation made against one Kinney, who was arrested by a United States deputy marshal, on a warrant charging him with the offence of violating the enforcement act passed by congress, by making an attempt to prevent the petitioner from voting at an election for a member of the legislature of said state. By section 5392 of the Revised Statutes of the United States, it is provided that every person having taken an oath before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered, that he will testify truly, who wilfully and contrary to such an oath states any material matter which he does not believe to be true, is guilty of perjury. As already mentioned, the petitioner is charged with having committed the alleged offence before a United States officer, in a proceeding then pending before him, being an examination into an accusation against a party for a violation of the fourth and fifth sections of the act of congress of May 31st, 1870 (16 Stat. 141), commonly called the "Enforcement Act." It is entitled, "An act to enforce the rights of citizens of the United States to vote in the several states of this Union, and for other purposes." By the eighth section it is declared that the United States courts "shall have, exclusively of the courts of the several states, cognisance of all crimes and offences committed against the provisions of this act." See, also, 9th and 11th sections of the judiciary act of 1789 [1 Stat. 76, 78]; Rev. St. § 712. Section 4460 of the Code of this state declares that "perjury shall consist in wilfully, knowingly, absolutely and falsely swearing, * * * or affirming in a manner material to the issue, or point in question, in some judicial proceeding, by a person to whom a lawful oath or affirmation has been administered;" and section 4461 prescribes the punishment. To my mind, it is clear that the words "judicial proceeding," as here used, refer solely to judicial proceedings under the laws of the state and its own tribunals of justice; no other meaning can be assigned to them. To extend their signification beyond this, would be an endeavor to empower state courts to invade the judicial authority of a distinct and separate government, and to punish persons for offences committed by them against the laws of another sovereign. People v. Kelly, supra. The provision in the

Code, defining the offence and naming the punishment, is a general law of the state. Now, keeping in view the complex character of our government—the dual relation which the individual states and the nation bear to each other—surely the texture of any argument must prove to be too frail, which would attempt to uphold the proposition that a crime committed in a judicial proceeding, before an officer of the United States, is a transgression of the criminal laws of a state. And, as not impertinent to what has been remarked, it may be asserted, with entire confidence in its correctness, that no justice or judge of a court of the United States, nor a commissioner of a circuit court of the United States, can, as such officer, administer an oath for state purposes, or issue a process to arrest a party for a violation of state laws, or inquire into his guilt or innocence. Nor do these familiar acts of congress, which have deputed state chancellors, judges and other magistrates to administer oaths, take acknowledgments, &c., in certain specified cases, in anywise affect what has just been said in regard to federal officers as such.

[Pausing to observe the facts developed here, and the principles of law which arise from them, it may now be inquired whether a proceeding by habeas corpus, even under the provisions of the act of February 5th, 1867,—which empowers the several federal courts, and either of the justices or judges of such courts, to award the writ in all cases where a party is in custody in violation of the constitution, or of any law of the United States—is a suitable and legal remedy to test the validity of the imprisonment of the petitioner, and to release him, if restrained of his liberty in contravention of the constitution or laws of the United States. It will not be questioned that, upon a cursory glance at this cause,—which is a civil suit, although it be before a judge instead of a court (Ex parte Milligan, 4 Wall. [71 U. S.] 1; and see Rev. St. § 763),—even the legal mind might be impressed with a doubt as to the appropriateness and legal soundness of this summary interposition. For (it may be said) thus to attempt to review a final judgment of a state tribunal of the highest original jurisdiction in civil and criminal causes, by a mode of procedure not conformable to the ancient and regular course heretofore used in the administration of justice between state courts and those of the Union, would be to authorize a federal judge to employ this writ as if it were a writ of error from a superior to an inferior tribunal. Such views may be plausible, but they do not convince; for it is obvious from the language and spirit of the act that it was not in the mind of congress to give it the effect assumed,—to have done so would have been to clothe a judge of a federal court with a power hitherto unheard of in national legislation. If, however, it be a legal fact that the superior court of Randolph county had jurisdiction of the offence and the offender, although the course of the court may have been irregular, and the conviction and judgment erroneous, the errors could not be corrected by a federal judge in a proceeding in habeas corpus, or, by such officer, in any other way known to our jurisprudence. But, if the state court did not have jurisdiction of the case, its judgment is utterly void, and the petitioner is restrained of his liberty in violation of the constitution, and the act of 1867 affords a proper and legal remedy to administer relief. If he committed the crime, as charged by the state in the indictment, the act was done within the authority and exclusive jurisdiction of the national courts; and, as they are the sole tribunals that could try him, so they alone could punish him. It follows, necessarily, from what has now been stated, that every person who infringes the criminal or penal laws of a particular government, can be tried and punished by that government only. And it is not too strong an expression to assert that it is a fundamental right of every citizen of, or person commorant within, the United States, to be tried by the tribunals of justice of that sovereign power whose criminal code he has transgressed; and the complement of this rule or axiom is, immunity or exemption from trial or punishment for that offence by any other government or sovereignty. The disregarding of this immunity has deprived the petitioner of his liberty in contravention of the "law of the land;" he was proceeded against and condemned without "due process of law." The fifth article of amendment of the constitution declares, among other immunities from arbitrary oppression, that no "person shall be deprived of life, liberty or property, without due process of law." This bulwark against invasion from the general government is extended by the fourteenth article of amendment, which forbids "any state" to "deprive any person of life, liberty or property, without due process of law." Mr. Justice Johnson, in Bank of Columbia v. Okely, 4 Wheat. [17 U. S.] 235, in speaking of the phrase "law of the land," which means the same as "due process of law" (Cooley, Const. Lim. 353), said that these words from Magna Charta were "intended to secure the individual from the arbitrary exercise of the powers of government, unrestrained by the established principle of private rights and distributive justice;" an exposition which has received the unqualified approval of a jurist of the highest eminence (Id. 355). As collaterally illustrative of the constitutional question as just presented, the fifteenth chapter of title thirteen of the Revised Statutes, passim, and sections 1778 to 1785 of Story on the Constitution, may be referred to. As the crime is alleged to have been committed before a United States circuit court commissioner, at a place within the southern judicial

district of this state, I am of the decided opinion that the federal courts for that district are the only tribunals that have cognisance of the offence and jurisdiction to try the party offending.

[There is another provision in the constitution, directly pertinent to the question involved in this investigation, and which may be treated either as a distinct proposition or as a corollary to those already invoked. A little more than a year anterior to the passage of the amendatory habeas corpus act of 1867, the thirteenth article of amendment of the constitution was ratified. It ordains that "neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." Mr. Justice Miller, in delivering the opinion of the court in the Slaughter House Cases, 16 Wall. [83 U. S.] 72, said: "Undoubtedly while negro slavery alone was in the mind of the congress which enacted the thirteenth article, it forbids any other kind of slavery, now or hereafter. If Mexican peonage or the Chinese coolie labor system shall develop slavery of the Mexican or Chinese race within our territory, this amendment may safely be trusted to make it void. And so if other rights are assailed by the states which properly and necessarily fall within the protection of these articles (thirteenth, fourteenth and fifteenth), that protection will apply, though the party interested may not be of African descent." If, as already observed, the United States courts are the only tribunals that have jurisdiction over the offence and power to punish the offender, then the petitioner has not had a trial under the provisions of the constitution; and it follows from his imprisonment under sentence of the superior court of Randolph county, that he is held in "involuntary servitude"—a condition inhibited by the thirteenth article, "except as a punishment for crime whereof the party shall have been duly convicted."

[Throughout this investigation, the questions in controversy have been considered without any regard whatever to the fact that the petitioner is of the negro race. The proceedings came before me under the first section of the amendatory habeas corpus act of 1867. And where, in a case like this —one, if I am not in error, that is fairly included, as well within the scope and true meaning of the language used by Mr. Justice Miller, speaking of the late amendments in the sentence last quoted, as within other provisions of the constitution which have been applied to the principles pervading this case—the original or secured privileges and immunities of any person within the United States, or any place subject to their jurisdiction, are invaded, distinctions in races become incommensurable. The petitioner is deprived of his liberty in contravention of the constitution and laws of the United

States, but I decline to discharge him absolutely, for the following causes: I am informed by the United States attorney, that an accusation stands against Bridges for the identical crime charged in the above indictment, and that this accusation can be investigated by the grand jury of the United States circuit court for the southern district of Georgia, which will be impanelled within a few days; and Attorney-General Hammond, of counsel for respondent, having made application for an appeal to the circuit court, therefore, Dock Bridges will be recommitted by the marshal to the jail of Fulton county, and there remain until further order. Mason's Case, 8 Mich. 70; In re Ring, 28 Cal. 247; Ex parte Gibson, 31 Cal. 610; Hurd. Hab. Corp. 416 et seq.; Rev. St. § 763. Ordered accordingly.] [5]

H. P. Farrow, U. S. Atty., and G. S. Thomas, Asst. U. S. Atty., cited Rev. St. U. S. §§ 629, 753; 1 Whart. Cr. Law, 185–197; Bouv. 533; Const. U. S. art. 3, § 2; 2 Bish. Cr. Law, § 987; People v. Kelly, 38 Cal. 145; State v. Pike, 15 N. H. 83; State v. Adams, 4 Blackf. 146.

N. J. Hammond, attorney general of Georgia, cited section 14, Act 1789 (1 Stat. 81); sections 13, 26, Act March 3, 1825 (4 Stat. 115); Fox v. Ohio, 5 How. [46 U. S.] 421; Ex parte Cabrera [Case No. 2,278]; Ex parte Des Rochers [Id. 3,824]; Ex parte Dorr, 3 How. [44 U. S.] 103; Norris v. Newton [Case No. 10,307]; U. S. v. Rector [Id. 16,132]; U. S. v. French [Id. 15,165]; Ex parte Jenkins [Id. 7,259]; Ex parte Watkins, 3 Pet. [28 U. S.] 193; People v. Kelly, 38 Cal. 145. He argued, inter alia, that the habeas corpus act of February 5, 1867 (14 Stat. 385), was intended as an amendment to the act of 1789, supra; that it simply extended the power of the United States courts in habeas corpus to persons restrained of liberty in violation of the constitution or any treaty or laws of the United States. The terms of the act do not seem to apply to cases where final judgment has passed, and the party is imprisoned in execution of sentence, and, if it applies to any new case, this amendment nowhere repeals the proviso of section 14, Act 1789 (1 Stat. 82), and Mr. Brightly, under it, cites the case from McAllister's Reports [Ex parte Des Rochers, Case No. 3,824], supra, as showing the limit to the authority of the United States courts. No clause in the constitution, or any law or treaty of the United States is violated by the punishment of the prisoner for perjury by a state court.

On appeal to the circuit court, the order of the district court was affirmed, and the following opinion delivered:

BRADLEY, Circuit Justice. Dock Bridges was indicted in the superior court of Ran-

---

[5] [From 2 Cent. Law J. 330.]

dolph county, Georgia, for perjury, committed October 22, 1874, in an examination before a United States commissioner, under the enforcement act. The offense, though set out according to its circumstances, was charged to have been committed against the laws of Georgia; but it was obvious that it was a crime against the laws of the United States only. It was perjury committed in the course of a judicial investigation under the acts of congress, and was an offense against the public justice of the United States. By the Revised Statutes of the United States (section 5392), every person who, having taken an oath before a competent tribunal, officer or person, in any case in which a law of the United States authorizes an oath to be administered, willfully and contrary to said oath, states any material matter which he does not believe to be true, is guilty of perjury, and shall be punished by fine and imprisonment, prescribed by the act, and be thereafter incapable of giving testimony in any court of the United States. Such an offense is exclusively cognizable in the courts of the United States. By section 629 of the Revised Statutes, it is declared that the circuit courts shall have exclusive cognizance of all crimes and offenses cognizable under the authority of the United States, except when otherwise provided, and concurrent jurisdiction with the district courts of crimes and offenses cognizable therein; and by section 711, the jurisdiction vested in the courts of the United States, of all crimes and offenses cognizable under the authority of the United States, is declared to be exclusive of the courts of the several states.

The validity of these acts of congress is not questioned. It would be a manifest incongruity for one sovereignty to punish a person for an offense committed against the laws of another sovereignty. And whilst certain offenses, involving breaches of the peace, counterfeiting the public money, etc., may be violations of both federal and state laws, and punishable under both, perjury in a judicial proceeding is peculiarly an offense against the system of laws under which the court is organized and proceeding. At all events, congress has declared that the courts of the United States shall have cognizance, exclusive of the state courts, of all crimes and offenses cognizable under its authority. Hence, it was clearly in violation of the laws of the United States for the state court to try and imprison the defendant for the crime in question. The court had no jurisdiction of the case. The proceedings were null and void. It is contended, however, that where a defendant has been regularly indicted, tried and convicted in a state court, his only remedy is to carry the judgment to the court of last resort, and thence by writ of error to the supreme court of the United States, and that it is too late for a habeas corpus to issue

from a federal court in such a case. This might be so if the proceeding in the state court were merely erroneous; but where it is void for want of jurisdiction, habeas corpus will lie, and may be issued by any court or judge invested with supervisory jurisdiction in such case. Ex parte Lange, 18 Wall. [85 U. S.] 163. As a general rule, when it appears by a return to a habeas corpus that the prisoner is confined upon a regular charge and commitment for a criminal offense, and especially if he be confined in execution after a conviction, he will be at once returned into custody, it being presumed that the court having such custody has examined, or will examine and lawfully determine the case; and, at all events, that its judgment will be subject to such regular proceeding for review as is provided by law.

In addition to this cautionary and conservative rule of the common law, the fourteenth section of the judiciary act of 1789 provided that the writ should in no case extend to prisoners in jail, unless where they were in custody under or by color of the authority of the United States, or were committed for trial before some court of the same, or were necessary to be brought into court to testify. 1 Stat. 82. This provision prevented its application to persons imprisoned under state process. [But the general rule does not apply where the order of commitment is made by tribunal or officer having no jurisdiction to make it; and the proviso of the 14th section of the judiciary act has been greatly modified.][4] The benefit of the writ may now be had by prisoners in jail, not only when in custody under authority of the United States, but in 1833, when the nullification proceedings were adopted in South Carolina, it was extended to those in custody for an act done in pursuance of a law of the United States, or of a judgment of any its courts. 4 Stat. 634. The primary object of this statute was to protect the revenue officers in carrying out the acts of congress. In 1842, when the complications growing out of the McLeod Case, and the Canada rebellion occurred, it was extended to foreigners acting under the authority and sanction of their own government. 5 Stat. 539. This was to prevent a single state, as was done by New York in that case, from interfering with our foreign relations.

In view of our late civil strife, and the necessity of protecting those who claim the benefit of the national laws, congress, by the act of February 5, 1867, extended the writ to "all cases where any person may be restrained of his or her liberty in violation of the constitution, or of any treaty or law of the United States," and made it issuable by "the several courts of the United States, and

---

[4] [From 2 Cent. Law J. 368, and 7 Chi. Leg. News, 306.]

the several justices and judges of said courts within their respective jurisdiction." 14 Stat. 385. The present case clearly belongs to the last category. The relator was certainly "restrained of his liberty in violation of a law of the United States." And although it may appear unseemly that a prisoner, after conviction in a state court, should be set at liberty by a single judge on habeas corpus, there seems to be no escape from the law. If it were a case in which the state court had jurisdiction of the offense, the general rule of the common law would intervene, and require that the prisoner should be remanded, and left to his writ of error. In such a case, although the judgment were erroneous, the imprisonment would not be in violation of the constitution or laws of the United States. The judgment might be wrong, but the imprisonment under it would be right until the judgment was reversed. But, as before shown, the state court had not jurisdiction of the offense. It might, however, be a wise amendment of this law, to provide that in all cases after conviction, the party should be put to his writ of error to the supreme court of the United States. The statutes above cited are condensed in section 753 of the Revised Statutes of the United States. They have had the effect greatly to enlarge the jurisdiction by habeas corpus in the courts of the United States since the first enactment on the subject in 1789. They have removed all impediment to its use which formerly existed where the prisoner was committed under state authority, provided his imprisonment is contrary to the United States constitution or laws.

The order of discharge must be affirmed.

NOTE [from original report]. The prisoner was thereupon discharged, but was immediately arrested upon a bench warrant from the United States court in Savannah, whither he was sent.

NOTE [from original report]. The opinion in the above case having been written in much haste—from the pressure of business on the circuit—and the subject being one of great importance, the circuit justice has revised it for the purpose of presenting his views more clearly and explicitly, and as revised it is above given.]