Opinion delivered March 5, 1884.

[No. 1637.]

## NEWTON BUNTAIN *v.* THE STATE.

1. PRACTICE—CONTINUANCE—DILIGENCE.—An application for a continuance, if prematurely made, and under circumstances tending to show that, by the use of ordinary diligence between the date of the affidavit and the trial, the grounds of the application might have been obviated by the affiant, is unquestionably insufficient.

2. SAME—CASE STATED.—The case being called for trial late in the evening, the defense stated that it was not ready to announce, as it had attachments out for witnesses who might be in by next morning. Thereupon the court requested defendant's counsel either to have his witnesses present next morning or his application for continuance ready. Next morning defendant announced that his witnesses were not present and that he had only a portion of his application ready, and asked for an hour's time to complete it. This the court declined to do, but offered to allow twenty-five minutes, which the defendant declined, and the court ordered the trial to proceed. *Held*, that in this action the court did not err.

3. SAME.—Bill of exceptions to the refusal of an application for a continuance should not only show that the application was in all respects sufficient, but should show the desired evidence so as to manifest its materiality.

4. PRACTICE—INDICTMENT—EVIDENCE.—The delivery of a watch as a pledge for the payment of borrowed money being the gravamen of the swindle charged by the indictment, it was essential that the act of delivery should be averred clearly, affirmatively and positively, and not by way of argument or inference. But see the opinion for an averment in the indictment *held* to be sufficient to so charge the delivery; and being properly charged, it was proper to admit evidence of the delivery.

5. SWINDLING—CIRCUMSTANTIAL EVIDENCE—CHARGE OF THE COURT need not and should not expound the law of circumstantial evidence when the inculpatory proof is not purely circumstantial. See the opinion *in extenso* for evidence held not to be circumstantial with respect to the offense charged.

6. SAME—PRACTICE.—That the defendant, at the time he obtained the money under false pretenses, intended to repay the same, and to redeem the pledge, could not operate to relieve the act of its criminal character; and the trial court properly refused to charge the jury to that effect, and correctly excluded proof of the defendant's intent and ability to do so.

7. SAME.—It is only where the charge of the court wholly fails or is radically defective in presenting the law applicable to the various phases of the case that the failure of the defendant to request special charges will be excused, and the charge revised.

APPEAL from the District Court of Tarrant. Tried below before the Hon. A. J. Hood.

The conviction was for swindling, and the penalty imposed was a term of two years in the penitentiary.

T. F. Nash was the first witness for the State. He testified, in substance, that in the year 1882 he became security on the bail bond of the defendant, who was then charged with an assault. Defendant subsequently forfeited his bond, and witness got Charley Scott to go after him. Scott brought him back during the January or February term, 1883, of the county court. Defendant pleaded guilty to the charge, and his fine and costs were taxed in the amount of fifty-five dollars and forty-five cents. In the court house, at that time, in the presence of Scott and John F. Swayne, the defendant asked witness to advance that amount of money on a watch which he exhibited and claimed to own. He represented the watch to be one which he valued highly as a gift from his father, and he promised to redeem the same in a few days, if witness would advance the

fifty-five dollars and forty-five cents on it as a pledge. Witness examined the watch, found it to be a double cased gold watch, worth sixty-five or seventy dollars, and agreed to accept it as a pledge, and advanced the amount named, fifty-five dollars and forty-five cents, on it. Defendant delivered the watch to witness as a pledge. Witness received it as defendant's watch, and believing it to be defendant's watch.

Some three or four months after this, C. W. Schaff came to witness's saloon and asked to be shown the watch. Witness showed it to him, and Schaff identified it at once as his. He, Schaff, then made complaint against defendant, and when, on the examining trial, he swore to it, witness delivered it to him. Defendant never redeemed the watch, as he promised.

C. W. Schaff testified, for the State, that on December 25, 1882, he was a freight conductor on the International and Great Northern railway, with headquarters at Palestine. The defendant at that time was a brakesman for him. Witness, in June or July, 1883, found a watch belonging to him in the possession of T. F. Allen, in Fort Worth. He recognized the watch as soon as he saw it. It was an ordinary double case "Waltham" gold watch, of the "Ellery" make, worth sixty-five dollars. It had two dents on the outer case, by which, in connection with its general appearance, witness identified it. Witness had some time before taken the number, but did not have the card on which he penciled it with him; but on comparing the numbers when he returned to Palestine he found them the same. This watch was stolen from him in Palestine, on December 25, 1882. On that day defendant and witness were together at witness's hotel—the one at which witness boarded. At about half-past four o'clock, a. m., on that morning, witness went up to his room and went to bed, first folding his vest containing the watch and putting it under his head. He found his vest next morning behind the trunk, but the watch was gone. Defendant knew where witness's room was, and had often seen the watch. Some fifteen days thereafter defendant was arrested and brought to Fort Worth under some criminal charge. On his return he told witness that he had been fined for fighting, and had borrowed eighty dollars with which to pay his fine. It was this fact which induced the witness to go to Fort Worth to look after his watch.

C. R. Scott testified that the defendant, in his presence, pawned the watch to Nash for money to pay his fine.

The motion for new trial raised the questions discussed in the opinion.

*B. G. Johnson*, for the appellant.

*J. H. Burts*, Assistant Attorney General, for the State.

White, Presiding Judge. An affidavit for a continuance, if prematurely made, and under circumstances tending to show that the grounds of the application by the use of ordinary diligence between the date of the affidavit and the trial might have been obviated by the affiant, is unquestionably insufficient. (*Lewis* v. *Williams*, 15 Texas, 48; *Parker* v. *McKelvain*, 17 Texas, 158; *Parker* v. *Campbell*, 21 Texas, 763.)

Such, however, is not the case before us, nor is the rule invoked applicable. This case was regularly reached and called for trial in the evening between the hours of four and five o'clock p. m. Announcement of ready was made by the county attorney, when defendant's counsel stated that he could not, at that time, announce because he had attachments out for two witnesses who might come in by next morning; whereupon the court requested defendant's counsel either to be ready by next morning or have his application for continuance ready. Next morning when the case was again called, defendant's counsel stated that his witnesses were not present, that he had two pages of his application for continuance written, and he asked the court to give him an hour's time within which to complete it. This the court declined to do, but proposed to give him twenty-five minutes, which counsel declined, and the court ordered the case to proceed to trial; which was immediately done.

From this statement, taken from the bill of exceptions, it is apparent that the adjournment of the case over until morning was for the purpose of having the witnesses or the application for continuance ready at that time. There would have been no impropriety in defendant's preparing his application then and there, to be used or not as occasion required on the next morning, and an application prepared under such circumstances, in case it had been offered, certainly could and would not have been rejected by the court upon the ground that it was premature, especially when the court had admonished defendant to have it prepared and ready for submission in case the witnesses should not be on hand when the case was called. As shown by the bill.

of exceptions, the question, so far as it pertained to the absent witnesses, was not one of diligence, and so far as it pertained to defendant was not one of premature action. Having called the case for trial the evening before, and given ample time for the preparation of the application for continuance, defendant had no right to claim a further indulgence, to the the delay of the other business of the court. If he has been injured he has no one to blame but himself.

But can it be even probable that he has been injured ? This it is impossible for us to answer, since the bill of exceptions wholly fails to show what the witnesses were expected to prove. Had the bill under the facts therein exhibited been entirely meritorious, we should have hesitated in acting upon it in the absence of an additional statement of the facts proposed to be proven by the absent witnesses, because, though all diligence to procure them might have been used, if their evidence would be immaterial the application should not have been granted. In addition to the facts stated in the bill of exceptions, all other facts essential to the sufficiency of the application for continuance were requisite to enable this court to pass intelligently upon the only question which can arise in connection with a defendant's application for continuance under the law as it now exists, and that is, has defendant been injured by the ruling of the court in refusing his application ? To discuss questions purely incidental and collateral, under the present status of the law, when entire conformity with its requirements does not make the application a matter of right, without knowing whether or not defendant is or may be able to comply with those requirements, appears to us a work of supererogation. A bill of exceptions should contain all the facts necessary to a full understanding of the question to be determined.

A motion to quash the indictment, comprising eight grounds, was made and overruled. The main ground insisted upon is that, the overt act of delivering the watch in pledge to secure the money borrowed being the gravamen of the offense in this case, the delivery of the pledge should be averred clearly, affirmatively and positively, and not by way of argument or inference. In support of this proposition we are cited to Lutton's case, 14 Texas Court of Appeals, 518. Unquestionably the rule is as contended for.

But is the indictment here obnoxious to the rule? Most clearly not, in our opinion. It alleges, "and the said Nash, then and

there believing the said false pretenses and fraudulent represen-
tations so made as aforesaid by the said Buntain, and being
deceived thereby, was induced by reason of said false pretenses
and fraudulent representations, so made as aforesaid, to loan
said Buntain, and deliver to one John F. Swayne, at his re-
quest and for his use, and did then and there loan to the said
Buntain and deliver to said Swayne, at said Buntain's request
and for his use and benefit, *upon the security and pledge of the
said watch, then and there by the said Buntain delivered to the
said Nash as such security and pledge for said loan, the sum of
fifty-five dollars and forty-five cents,*" etc. If this is not a direct,
affirmative and positive allegation of the delivery of the pledge,
then we do not understand the allegation. Taking into consid-
eration the complicated nature of the transaction, in our opinion,
the accuracy and skill the pleader has displayed in preparing
his bill is worthy of commendation, and if any necessary alle-
gation has been omitted, counsel has not pointed it out when we
subject the indictment to the test of his objections, and we, on
our part, have failed to discover it. Having alleged a delivery
of the watch in pledge to Nash, it was not error to permit Nash
to prove the delivery.

This was not a case of circumstantial evidence, and the court
was not required to charge the jury with a view to such testi-
mony. Nash swears positively to the facts connected with the
delivery of the watch to him in person by the defendant, and
Schaff, the owner, positively identifies the watch as his. The
facts going to implicate and criminate the defendant with the
theft of the watch may depend upon circumstantial testi-
mony, but the swindling of Nash, the offense for which he was
indicted, tried and convicted, is as near a case of positive testi-
mony as can well be conceived. If a court were required to
charge the law of circumstantial evidence in all cases where reli-
ance was had upon circumstances to establish any particular
fact, then indeed there would be but few if any cases in which
such a charge would not be required. But such is not the rule.
A charge upon circumstantial evidence is only required when
the evidence of the main facts essential to guilt is purely and
entirely circumstantial.

Again it is contended, "If defendant intended to refund the
money and redeem the pledge at the time he obtained the money,
then he is not guilty of swindling," and that it was error in the
charge of the court that the jury were not so instructed. The

crime denounced by the statute is the obtaining by false pretenses. As was said in *The State* v. *Thatcher,* 35 New Jersey, 445: "The defendant's ability or his ultimate intention to do what the law would compel him as the principal debtor to do cannot save him." (See same case in 1 Green's Crim. Reps., 562.) And the language of the Supreme Court of Massachusetts is equally explicit: "The intent to defraud is the intent by the use of such false means to induce another to part with his possession and confide it to defendant, when he would not otherwise have done so. Neither the promise to repay nor the intention to do so will deprive the false and fraudulent act in obtaining it of its criminality." (*Comm.* v. *Tenny,* 97 Mass., 50; *Comm.* v. *Mason,* 105 Mass., 163.) "The offense is complete when the property or money has been obtained by such means, and would not be purged by subsequent restoration or repayment. Evidence of the ability to make the repayment is therefore immaterial and inadmissible. The possession of the means of payment is entirely consistent with the fraud charged." (*Comm.* v. *Cole,* 115 Mass., 481; S. C., 2 Green's Crim. Reps., 222; 3 Hawley's Amer. Crim. Repts., 91 and 92; note to *Fay* v. *The Commonwealth;* 28 Gratt, 912; see also Desty's Amer. Crim. Law, sec. 149*g.*)

Another objection urged to the charge is that it failed to submit specifically to the jury as an issue made by the evidence, whether the watch pledged to Nash was the watch stolen from Schaff. Under the charge as given, it is impossible that the jury could have found the defendant guilty unless they had first found this fact. In other words, the charge of the court necessarily involved and covered this issue. If the defendant desired a more specific or explicit presentation of the question, he should have submitted special, requested instructions. In the absence of such special, requested instructions, it is only where the charge wholly fails or is radically defective in presenting the law applicable to the various phases of the case that we would hold it insufficient.

We have discussed all the material questions raised and argued in this case. We have found no reversible error in the record, and the judgment is affirmed.

*Affirmed.*