## COMMONWEALTH vs. NATHAN P. PRATT.

Middlesex.   Jan. 21.— March 1, 1884.   DEVENS & C. ALLEN, JJ., absent.

The treasurer of a savings bank is indictable, for embezzlement of the property of the bank, under the Gen. Sts. c. 161, § 38.

If a count in an indictment, under the Gen. Sts. c. 161, against the treasurer of a savings bank, for embezzlement of its property, after describing the acts done, alleges that, by force of the statute, the defendant "is deemed to have committed the crime of simple larceny," and that he did steal, take, and carry away the property "in the banking-house aforesaid," thus leaving it in doubt whether the count is framed under § 38 or § 39, the count is bad; and will be quashed on motion.

In an indictment, under the Gen. Sts. c. 161, § 38, against the treasurer of a savings bank, for embezzlement of its property, an allegation of the embezzlement of money to a certain amount, and of mortgages and notes, so described as to identify them, is a sufficient description of the property alleged to have been embezzled.

If an indictment alleges the embezzlement of certain mortgages and notes, and certain "pieces of paper writing," and the mortgages and notes are so described as to identify them, it is immaterial, on a motion to quash, whether the pieces of paper writing are so described.

If some of several counts in an indictment are good, the indictment will not be quashed for defects in the other counts.

A motion to require the government to elect upon which of several counts in an indictment it will rely at the trial, is addressed to the discretion of the presiding judge; and his refusal to order an election is not subject to exception.

At the trial of a criminal case, the government is not required, upon the offer and request of the defendant to testify, to call him as a witness to prove his own signature.

At the trial of an indictment against the treasurer of a savings bank, for embezzlement of its property, the defendant has no ground of exception to the admission in evidence of a book of records of the bank, kept by the defendant as its secretary, containing the record of a vote authorizing the treasurer of the bank to release and discharge the mortgages of the bank, which the government contends has been fraudulently altered by striking out the word "and" before "discharge," and by adding the words "and assign" before the words "the mortgages."

An unauthorized assignment and delivery of a mortgage, the property of a savings bank, by its treasurer, is an embezzlement of the mortgage, although his act did not pass the title of the bank.

An assignment and delivery of a mortgage, the property of a savings bank, by its treasurer, for his own use and benefit, is an embezzlement of the mortgage, although the treasurer believed that he had authority to assign the same for the benefit of the bank.

A person who embezzles several articles of property at one time may be indicted and convicted for the embezzlement of each article separately.

INDICTMENT in twenty-four counts, returned at June term 1882 of the Superior Court.   The first three counts were as follows:

1. " The jurors for the Commonwealth of Massachusetts on their oath present, that Nathan P. Pratt, late resident of Reading, in the county of Middlesex and Commonwealth aforesaid, on the first day of October, in the year of our Lord one thousand eight hundred and seventy-eight, was, and for the space of six months next following said first day of October continued to be, an officer, to wit, the treasurer, of the Reading Savings Bank, which was then and there an incorporated company duly and legally established, organized, and existing as a corporation under and by virtue of the laws of said Commonwealth, he, the said Nathan P. Pratt, not being during any part of the time aforesaid an apprentice of said Reading Savings Bank, and not being during any part of the time aforesaid a person under the age of sixteen years; and that said Nathan P. Pratt on the first day of October, in the year one thousand eight hundred and seventy-eight, at Reading aforesaid, in the county aforesaid, did, by virtue of his said office as treasurer as aforesaid, and while he continued and was employed in his said office as treasurer as aforesaid, have, receive, and take into his possession certain money to a large amount, to wit, to the amount of twenty thousand dollars and of the value of twenty thousand dollars; sundry bank bills amounting in the whole to twenty thousand dollars and of the value of twenty thousand dollars; sundry bank checks for money amounting in the whole to twenty thousand dollars and of the value of twenty thousand dollars; sundry promissory notes amounting in the whole to twenty thousand dollars and of the value of twenty thousand dollars; sundry bills of exchange amounting in the whole to twenty thousand dollars and of the value of twenty thousand dollars; sundry drafts for money amounting in the whole to twenty thousand dollars and of the value of twenty thousand dollars; and one hundred pieces of paper, said pieces of paper being securities for money each of the value of one thousand dollars, all of the goods, property, and money of said Reading Savings Bank; and the said money, bank bills, checks, promissory notes, bills of exchange, drafts, and pieces of paper, then and there unlawfully, fraudulently, and feloniously did embezzle and convert to his own use, without the consent of said Reading Savings Bank. Whereby, and by force of the statute in such case made and provided, the said Nathan

P. Pratt is deemed to have committed the crime of simple larceny. And so the jurors aforesaid upon their oath aforesaid do say that the said Nathan P. Pratt, on said first day of October, in the year eighteen hundred and seventy-eight, at Reading aforesaid, in manner and form aforesaid, the said money, bank bills, checks, promissory notes, bills of exchange, drafts, and pieces of paper, the property of said Reading Savings Bank, from the said Reading Savings Bank feloniously did steal, take, and carry away, contrary to the form of the statute in such case made and provided."

2. "And the jurors aforesaid, on their oath aforesaid, do further present, that the said Nathan P. Pratt, late resident of Reading in the county of Middlesex aforesaid, on the thirty-first day of October, in the year of our Lord one thousand eight hundred and seventy-eight, at said Reading in the county of Middlesex aforesaid, being then and there an officer, to wit, the treasurer, of the Reading Savings Bank, the same being then and there an incorporated company, duly and legally established, organized, and existing by the laws of said Commonwealth, he, the said Nathan P. Pratt, not being then and there an apprentice to the said Reading Savings Bank, nor a person under the age of sixteen years, did then and there, by virtue of his said office and employment as treasurer as aforesaid, have, receive, and take into his possession a certain paper writing containing a conveyance of land, the same being then and there a deed of mortgage of certain land situate in said Reading before then made and executed by David P. Brown to said Reading Savings Bank, and delivered to said Reading Savings Bank by said David P. Brown, and given to secure to said Reading Savings Bank the payment of the sum of two thousand dollars, which said deed of mortgage was then and there of the value of two thousand dollars ; one promissory note given by said David P. Brown to the said Reading Savings Bank or order, as payee, for the sum of two thousand dollars, for the payment of money, and dated the twentieth day of October, in the year of our Lord one thousand eight hundred and seventy, and of the value of two thousand dollars; two pieces of paper writing of the value of two thousand dollars each piece, all of the property, goods, and chattels of said Reading Savings Bank ; and the said mortgage

deed of land, promissory note, and pieces of paper writing, he, the said Nathan P. Pratt, then and there unlawfully, fraudulently, and feloniously did embezzle and fraudulently convert to his own use, without the consent of said Reading Savings Bank. Whereby, and by force of the statute in such case made and provided, the said Nathan P. Pratt is deemed to have committed the crime of simple larceny. And so the jurors aforesaid, upon their oath aforesaid, do say that the said Nathan P. Pratt then and there, in manner and form aforesaid, the aforesaid mortgage deed of land, promissory note, and pieces of paper writing, of the property, goods, and chattels of the said Reading Savings Bank, feloniously did steal, take, and carry away, contrary to the form of the statute in such case made and provided."

3. "And the jurors aforesaid, on their oath aforesaid, do further present, that the said Nathan P. Pratt, late resident of Reading in the county of Middlesex aforesaid, on the thirty-first day of October, in the year of our Lord one thousand eight hundred and seventy-eight, at said Reading in the county of Middlesex aforesaid, being then and there the treasurer of the Reading Savings Bank, a corporation then and there duly and legally established, organized, and existing under and by virtue of the laws of said Commonwealth as an incorporated bank, did, by virtue of his said office and employment of treasurer, and whilst he, the said Nathan P. Pratt, was employed in said office of treasurer, have, receive, and take into his possession a certain paper writing containing a conveyance of land, the same being then and there a deed of mortgage of certain land situate in said Reading, before then made and executed by Sarah P. Bancroft to said Reading Savings Bank, and delivered to said Reading Savings Bank by said Sarah P. Bancroft, and given to secure to said Reading Savings Bank the payment of the sum of five hundred dollars, which said deed of mortgage was then and there of the value of five hundred dollars; one promissory note given by said Sarah P. Bancroft to the said Reading Savings Bank or order, as payee, for the sum of five hundred dollars, and dated the twenty-first day of January, in the year of our Lord one thousand eight hundred and seventy-five, and of the value of five hundred dollars; two pieces of paper writing, the same being securities for money, of the value of five hundred dollars each

piece, all of the property, goods, and chattels of said Reading Savings Bank in their banking-house there situate being, and the said mortgage deed of land, promissory note, and pieces of paper writing, he, the said Nathan P. Pratt, then and there unlawfully, fraudulently, and feloniously did embezzle and fraudulently convert to his own use, in the banking-house aforesaid, without the consent of said Reading Savings Bank. Whereby, and by power of the statute in such case made and provided, the said Nathan P. Pratt is deemed to have committed the crime of simple larceny. And so the jurors aforesaid, on their oath aforesaid, do say that the said Nathan P. Pratt then and there, in manner and form aforesaid, the aforesaid mortgage deed of land, promissory note, and pieces of paper, of the property, goods, and chattels of the said Reading Savings Bank, feloniously did steal, take, and carry away, in the banking-house aforesaid, against the peace of the Commonwealth aforesaid, and contrary to the form of the statute in such case made and provided."

The 4th, 6th, 9th, 10th, 11th, 12th, 20th, and 21st counts followed the form of the third count. The 5th, 7th, 8th, 13th, 14th, 15th, 16th, 17th, 18th, 19th, 22d, 23d, and 24th counts followed the form of the second count.

Before the jury were empanelled, the defendant moved to quash the indictment, for the following reasons: "1. Because the same is not founded upon any statute applicable to the offence described therein. 2. Because the counts describe offences wholly repugnant and different. 3. Because there is no sufficient description of the property alleged to have been stolen." This motion was overruled, and the defendant excepted.

The defendant was then tried, before *Knowlton*, J. The government did not prosecute counts 18 and 19. On counts 22 and 24, the defendant was found not guilty; and on the remaining counts, a verdict of guilty was rendered. The defendant alleged exceptions, which appear in the opinion.

*C. S. Lilley*, for the defendant.

*E. J. Sherman*, Attorney General, for the Commonwealth.

COLBURN, J. 1. The first question raised by the motion to quash is, whether the defendant was indictable under § 38 or § 39 of the Gen. Sts. c. 161, (Pub. Sts. c. 203, §§ 40, 41,) or whether he might have been indicted under either section, at

the option of the prosecutor; the contention of the defendant being that he could only be indicted under § 39 of the Gen. Sts. *c.* 161.*

In determining this question, the history of these statutes furnishes much assistance. The first bank established in this Commonwealth was the Massachusetts Bank, incorporated on February 7, 1784, by the St. of 1783, *c.* 25; and on March 16, 1784, the St. of 1783, *c.* 53, an act to prevent frauds on that bank, was passed, the first section of which provides for the punishment of embezzlement from that bank, by its officers or servants.

On January 29, 1825, many banks having by that time been incorporated, the St. of 1824, *c.* 51, was passed, " to prevent and punish frauds upon banks," which provides for the punishment of embezzlement by an officer or servant " of any bank incorporated within this Commonwealth, for the purpose of issuing bills or notes; " and the St. of March 16, 1784, was repealed. " An act to regulate banks and banking," passed February 28, 1829, being the St. of 1828, *c.* 96, reënacts in § 26 substantially the act of January 29, 1825.

These acts were revised, and became § 27 of the Rev. Sts. *c.* 126, which is substantially a reënactment of the Sts. of 1824, *c.* 51, and 1828, *c.* 96, § 26, except that the words " any incorporated bank " are substituted for the words " any bank incorporated within this Commonwealth, for the purpose of issuing bills or notes; " and it was provided that the offender should be deemed to have committed the crime of larceny " in such bank," instead of simply the crime of larceny, as provided in the former statutes. This section was substantially reënacted in the St. of 1846, *c.* 171, § 1, and became § 39 of the Gen. Sts. *c.* 161.

The first act for the punishment of embezzlement, except those already mentioned, was the St. of 1834, *c.* 186. This act did not include officers or servants of an incorporated company. The first section of this act was revised, and extended to include officers, agents, clerks, or servants of any incorporated company;

---

* Section 38 applies to an embezzlement by an officer, agent, clerk, or servant of any incorporated company, and the offence is declared to be simple larceny. Section 39 applies to an embezzlement by an officer of an incorporated bank, and the offence is declared to be larceny in the bank.

in the Rev. Sts. c. 126, § 29, and became § 38 of the Gen. Sts. c. 161.

It is clear that, under the statutes of which § 27 of the Rev. Sts. c. 126, is a revision, an officer of a savings bank or institution for savings could not have been indicted, and it seems improbable that it was intended to include in § 27 an entirely different class of corporations from those to which the statutes of which it is a revision applied, without any note indicating the intention to make so important a change. It seems more probable that the substitution of the words "any incorporated bank," for the words "any bank incorporated within this Commonwealth, for the purpose of issuing bills or notes," was only for the purpose of brevity. There were at that time no incorporated banks, *eo nomine*, beside banks of issue, except one or two institutions for savings, which had been incorporated under the name of savings banks. We are aware of but one instance, that of "the Savings Bank for Seamen in the city of Boston." St. 1833, c. 73. Prior to 1843, institutions for savings were almost universally incorporated under the name of "institutions," and not "banks." Generally when the words "bank" and "incorporated bank" are used in the statutes without words of qualification, a bank of issue is meant. See Rev. Sts. c. 36; Gen. Sts. c. 57; Pub. Sts. c. 118. And this is the meaning ordinarily given to the word in the community. No one would suppose that a note "payable at any bank in Boston" was payable at a savings bank.

It would seem to be a forced construction to hold that an officer of an institution for savings, incorporated under that name, could be indicted under the Rev. Sts. c. 126, § 27, or the Gen. Sts. c. 161, § 39; and yet a savings bank and institution for savings differ only in name. In *Commonwealth* v. *Wyman*, 8 Met. 247, it was held that the defendant, who was president of a bank of issue, was not indictable for embezzlement from the bank under the Rev. Sts. c. 126, § 29, though that section in its terms included his offence, but must be indicted under § 27, as that section expressly applied to officers of such banks. The decision is put upon the ground that § 27 is a revision of statutes expressly relating to such banks. The decision in that case, as it related only to a bank of issue, has but slight bearing upon the question before us.

It seems probable that the Legislature designed that § 27 of the Rev. Sts. *c.* 126, should apply to officers of what were commonly known as banks, that is, banks of issue, to which only the statutes of which it was a revision applied; and that officers of all other incorporated companies, including savings banks or institutions for savings, should be included in § 29.

The decision in *Commonwealth* v. *Tenney*, 97 Mass. 50, that national banks are included within the provisions of the Gen. Sts. *c.* 161, § 39, has but slight bearing upon the present question, as national banks are banks of issue, and essentially alike in their functions to the state banks which they succeeded.

For the reasons before stated, we are of opinion that the defendant was indictable under the Gen. Sts. *c.* 161, § 38.

In the case of *Commonwealth* v. *Shepard*, 1 Allen, 575, the defendant was indicted under the St. of 1846, *c.* 171, § 1, for embezzlement as treasurer of a savings bank, and no question was made that he was not properly indicted under that statute.

In the present case, in which the question is raised, we do not find it necessary to determine definitely whether the defendant could properly be indicted under the Gen. Sts. *c.* 161, § 39, on the ground that a savings bank is an incorporated bank within the terms of that section, for the reason that we are of opinion that all the counts in the indictment which can be held to be founded on that statute are defective.

The offence prohibited by the Gen. Sts. *c.* 161, § 39, is declared to be larceny in a bank, which is larceny in a building. *Commonwealth* v. *Pratt*, 132 Mass. 246. All the counts which can be held to be based on § 39, after describing the acts done, proceed as follows : " Whereby, and by power of the statute in such case made and provided, the said Nathan P. Pratt is deemed to have committed the crime of simple larceny." This is not the offence which this section deems the defendant to have committed, but is the offence which the embezzler is deemed to have committed under § 38. These counts then go on, " and so the jurors aforesaid, on their oath aforesaid, do say," in substance, that the defendant did steal, take, and carry away the property " in the banking-house aforesaid; " thus charging larceny in a building. These different allegations leave it in doubt whether

these counts are framed under § 38 or § 39, and with which offence the defendant is charged. The penalty for the different offences is different. The allegation that the defendant is deemed to have committed simple larceny cannot be rejected as surplusage, as it is descriptive of the identity of the offence, or of the kind of larceny with which the defendant is charged. We are of opinion that these counts must be held to be bad. These are the counts to which the motion to quash refers as describing " offences wholly repugnant and different."

It is further objected, in the motion to quash, that there is no sufficient description of the property alleged to have been stolen. No greater particularity in the description of the property is required, in an indictment for embezzlement, than in one for larceny. *Commonwealth* v. *Concannon*, 5 Allen, 502. *Commonwealth* v. *Butterick*, 100 Mass. 1.

Under the Gen. Sts. *c.* 161, § 42, (Pub. Sts. *c.* 203, § 44,) it is sufficient to allege the embezzlement of money to a certain amount, without specifying any particulars of such embezzlement. *Commonwealth* v. *Bennett*, 118 Mass. 443. This is alleged in the first count, and whether the description of the other property in that count is sufficient, is immaterial under the motion to quash. In the other counts, the mortgages and notes are sufficiently described to identify them, and this is sufficient, at least under the counts based on the Gen. Sts. *c.* 161, § 38, and whether the " pieces of paper writing " are sufficiently described is immaterial under the motion to quash.

We are of opinion that the first, second, fifth, seventh, eighth, thirteenth, fourteenth, fifteenth, sixteenth, seventeenth, and twenty-third counts in the indictment are sufficient; but that the other counts upon which the defendant was found guilty are bad, so that no judgment can be entered upon them.

A part of the counts in the indictment being good, the motion to quash was rightly overruled. *Commonwealth* v. *Hawkins*, 3 Gray, 463. *Commonwealth* v. *Howe*, 13 Gray, 26.

2. The motions at the trial, to require the government to elect upon which of the counts in the indictment it would rely, were addressed to the discretion of the judge, and his refusal to order an election is not subject to exception. *Commonwealth* v. *Sullivan*, 104 Mass. 552.

3. All the exceptions to the rulings of the court that the government was not required, upon the offer and request of the defendant, to become a witness, to call him to prove writings and signatures, in cases where it would have been necessary to call him if it had not been for his position of defendant, may be considered together.*

We are of opinion that the government had the right to proceed in the proof of its case as if the defendant could not be a witness. It could not compel him to testify. He was "deemed a competent witness," "at his own request, but not otherwise." St. 1870, c. 393, § 1. Pub. Sts. c. 169, § 18. We do not think the method in which the government should prove its case was dependent upon his option. The purpose of the statute was to grant a privilege to the defendant, and not, at his election, to impose an obligation upon the government. The defendant had the full benefit of the statute, by testifying in defence as fully as he saw fit upon all parts of the case.

4. We see no ground for the exception to the ruling of the court, allowing the record of the vote authorizing the treasurer of the bank to release, discharge, and assign the mortgages of the bank, which the government contended authorized him, as it was passed, only to release and discharge mortgages of the bank, and had been fraudulently altered, to be exhibited to the jury, under the circumstances stated in the bill of exceptions. The book containing the record of the vote was the book of records of the bank, kept by the defendant, as its secretary, for the correctness of which he was presumably responsible, whether it was all in his handwriting or not. The government contended that inspection would show, not only changes in the record, but what the changes were. There had been evidence of the form in which the vote was originally passed. One step in proving a fraudulent alteration was to prove an alteration. The court passed only upon the admissibility of the record, not upon its effect; and it was clearly admissible.

---

* The defendant was the secretary as well as treasurer of the savings bank. The government was allowed, without calling him as a witness, to prove his signature, as secretary, to the book of records of the corporation, for the purpose of proving the organization of the corporation; to prove his signature as an attesting witness to the execution of a mortgage deed; and to prove his signature to an assignment of a mortgage.

As to the requests for instructions to the jury : The meaning of the defendant's first request is not readily apparent, but, as we understand it, it was in substance a request that the jury be instructed, that, as by an unauthorized assignment and delivery, the defendant could pass no title to the mortgages, as against the bank, such an act was not an assignment, and therefore not an embezzlement of the mortgages, as the bank could still enforce the mortgages against the mortgagors. This being the meaning, the instruction should not have been given. We are unable to see, as contended by the defendant in argument, that the request expressly assumes that the mortgages, as papers, were still in the bank. It assumes that the bank "retained the full property and benefit" of the mortgages, but not the mortgages as written papers. It was the mortgages, as written papers, which the defendant was charged with embezzling.

The instructions asked for in the second request should not have been given. If the defendant believed he had authority to assign mortgages and mortgage notes, he could not have believed that he had such authority except for the purposes of the bank; and the exceptions expressly state that "there was no evidence that the defendant ever believed that he had authority to sell the mortgages of the bank, except for the purposes of the bank;" and if he assigned mortgages and mortgage notes for his own use and benefit, it was an embezzlement of them.

The defendant further requested the judge to instruct the jury, if they found that the defendant took two or more mortgages at one time and assigned them to one assignee by one assignment, and the taking and assignment were all parts of a single transaction, that such taking and assignment would not support two or more several counts wherein the taking and assignment of said mortgages were alleged to be distinct acts of embezzlement; and that for the same transaction the defendant could not be convicted as for two or more distinct acts of embezzlement. That the defendant was not entitled to have this request given is settled by *Commonwealth* v. *Butterick*, and *Commonwealth* v. *Sullivan, ubi supra.*

No exception was taken to the instructions given to the jury, but only to the refusal to give the instructions requested.

*Exceptions overruled.*