GEORGE W. JOHNSON, receiver, *vs.* HIRAM P. GERALD
& others.

Worcester.   October 7, 1897. — November 23, 1897.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, & MORTON, JJ.

*Bond — Treasurer of Savings Bank — Approval by Trustees — Action —*
*Defence — Delivery and Acceptance.*

The treasurer of a savings bank was also treasurer of a town and the proprietor
of a store, in the rear room of which was the office of the bank.  In the front
room was a desk at which he was accustomed to do business of the bank and
of the town, as well as of himself.  He embezzled moneys of the bank and
absconded, and afterwards a bond, properly executed nearly five years previ-
ously, given to secure the faithful performance of his duties as treasurer of the
bank, was found with other papers behind the desk on a shelf where he often
put papers and books belonging to the bank, as well as others.  The shelf was
not intended as a permanent place of deposit for valuable papers, but was ordi-
narily used as a place where articles were left temporarily.  In an action by the
receiver of the bank on the bond, the treasurer testified that he left the bond
on the shelf soon after it was executed, that it passed out of his memory, and
that it remained there until it was found after he had absconded.  *Held*, that
the evidence warranted a finding that the bond was delivered so as to take effect
as a binding contract.

A bond of the treasurer of a savings bank may become binding without a formal
vote of approval by the trustees of the bank.

It is no defence to an action on a bond given by the treasurer of a savings bank,
that an attested copy of the bond sent to the commissioners of savings banks
was not accompanied by a certificate of the custodian of the bond that the origi-
nal was in his possession, as required by St. 1889, c. 180.

A bond, properly executed, given to secure the faithful performance of the duties
of the treasurer of a savings bank, and dated one day before the expiration of
five years from the time when a statute took effect requiring such treasurers to
give a new bond as often as once in five years, remained in the hands of the
treasurer for nearly five years after he returned a copy of it to the commis-
sioners of savings banks, as required by statute, and two of the trustees of the
bank signed it as sureties.  In an action on the bond, some of the trustees testi-
fied that the bond was not presented for approval at any meeting at which they
were present; and there was evidence indicating that the memory of some of
the witnesses was imperfect and unreliable.  *Held*, that there was circumstantial
evidence proper for the consideration of the jury tending to show that the bond
was to the satisfaction of the trustees.

If a bond, properly executed, given to secure the faithful performance of the duties
of the treasurer of a savings bank, remains in his custody for nearly five years,
and is found after he has absconded in the place where he kept it with other
papers, by the receiver of the bank, although there has been no formal approval
of the bond by the trustees of the bank, the bringing of an action on the bond
by the receiver is a ratification, if ratification is necessary, of the act of the

treasurer in accepting and holding the bond after delivery which may give it effect as a binding contract, there being no evidence that his action was ever objected to by the corporation, or by any member of the board of trustees.

CONTRACT, by the receiver of the Brookfield Savings Bank, upon a bond executed by the first named defendant as principal, and by the other defendants as sureties, and conditioned for the faithful performance by him of the duties of treasurer of the bank. At the trial in the Superior Court, before *Dewey,* J., the jury returned a verdict for the plaintiff; and the defendant sureties alleged exceptions. The facts appear in the opinion.

*C. M. Rice,* (*W. A. Gile & H. W. King* with him,) for the defendant sureties.

*W. S. B. Hopkins & R. Hoar,* (*W. S. B. Hopkins, Jr.* with them,) for the plaintiff.

KNOWLTON, J. The defendants alleged at the trial that the bond was signed by the sureties upon an agreement that it should not take effect until it was also signed by the father of the principal, and that he never signed it. In reply to a question in writing submitted to them by the judge, the jury found that there was no such agreement between the principal and any of the sureties, and this part of the defence therefore fails.

The other contention of the defendants is that there was no evidence sufficient to warrant a finding that the bond was delivered so as to take effect as a binding contract, and that the presiding judge failed to give the jury proper instructions upon this branch of the case. The instrument was perfect in form, was signed by the principal and five sureties, and was executed in the presence of attesting witnesses. It bears date one day before the expiration of five years from the time when St. 1886, c. 93, (now St. 1894, c. 317, § 14,) took effect, requiring treasurers of savings banks to give a new bond as often as once in five years. A letter had previously been sent by one of the commissioners of savings banks asking for it. The treasurer filed with the commissioners of savings banks an attested copy of this bond, and so complied with St. 1889, c. 180, (now St. 1894, c. 317, § 14,) except that he did not accompany it with a certificate of the custodian of the bond that the original was in his possession. The treasurer was also treasurer of the town of Brookfield, and the proprietor of a drug store. The office of

the bank was in the rear room in his store. In the front room was a desk, at which he was accustomed to do business of the bank and of the town, as well as of himself. The bond was found, with other papers, behind the desk on a shelf, where he often put papers and books belonging to the bank, as well as others. The shelf was not intended as a permanent place of deposit for valuable papers, but was ordinarily used as a place where articles were left temporarily. The treasurer testified that he left the bond there soon after it was executed, that it passed out of his memory, and that it remained there until it was found after he left the bank and went away. It appeared that he embezzled moneys of the bank and absconded nearly five years after the bond was signed. His statement that he intended to obtain the signature of his father, in accordance with an agreement made between him and the sureties, must have been disbelieved by the jury.

There was ample evidence to warrant a finding that, after this bond was completely executed, he, as the principal in it, intended to deliver it to give it effect as a binding contract, and to have it pass from the possession of himself as the principal obligor to himself as the officer of the bank who was the general custodian of the bank's books and papers. The jury might well find that, acting officially, he afterwards held it on account of the bank as its property. They might find this, notwithstanding that St. 1889, c. 180, contemplates that the trustees of a savings bank will appoint some other person than the treasurer to be the custodian of his official bond.

The defendants contend that the bond could not become binding without a formal approval by a vote of the trustees that it was to their satisfaction. But this contention is unfounded. Their approval of it did not need to be by a formal vote. *Amherst Bank* v. *Root*, 2 Met. 522, 534. Nor is it a defence to this action that the attested copy of the bond sent to the commissioners of savings banks was not accompanied by a certificate of the custodian of the bond that the original was in his possession. The provision of the statute in regard to this is directory, and if a failure to comply with it subjects the treasurer to a penalty, or other officers to any other liability, it does not affect the validity of a proper bond which has been duly delivered and accepted. *Amherst Bank* v. *Root, ubi supra.*

There was circumstantial evidence proper for the considera-
tion of the jury tending to show that the bond was to the satis-
faction of the trustees. The trustees may fairly be presumed
to have known the law, and to have known that a new bond was
required at or about the time this was given. This bond re-
mained in the hands of the treasurer for nearly five years after
he returned a copy of it to the commissioners of savings banks.
Two of the members of the board of trustees signed it as sure-
ties. The testimony of some of the members of the board that
the bond was not presented for approval at any meeting at
which they were present was not conclusive. There was evi-
dence indicating that the memory of some of the witnesses was
imperfect and unreliable. We are of opinion that there was
evidence for the jury in support of this part of the plaintiff's.
case.

But even if the trustees as a board never considered the ques-·
tion whether the bond was sufficient, we are of opinion that
there was evidence to warrant a finding that the bond was de-·
livered and accepted as a binding contract. The jury might
well believe that the principal obligor delivered it as an indi-
vidual to himself as an executive officer of the bank, and that
as such executive officer he assumed to accept it, and continued
to hold it as the property of the bank until he absconded, leav-
ing it in the place where he had kept it. There it was found,
and it passed to the receiver as a part of the property of the
bank. In *Amherst Bank* v. *Root*, 2 Met. 522, 533, a distinction
is pointed out between an act which would amount to an ac-
ceptance of a bond on the part of a corporation so as to give it
legal effect as against the obligors, and that expression of appro-
bation on the part of the directors which is required by its
charter and by-laws. It is stated that, if the bond was properly
executed and delivered in the mode required by law to give it
effect, it may be deemed the deed of the principal and sureties
to be enforced against them, although it may never have been
approved by the directors. If the bond in the present case was
delivered as and for a proper bond, the treasurer, as the chief
executive officer of the bank, having the general custody of the
papers of the bank, was authorized to hold it for the bank as its
property, at least until the ownership of it was repudiated by

thė trustees, or until some other action was taken by them in regard to it. He could not determine the question whether it was satisfactory to them so as to relieve himself of the duty to give another bond if they were not satisfied. But his official acceptance and holding of it after the delivery might give it effect as a binding contract, at least if his action was subsequently ratified by the trustees, or by the receiver if no action was taken by the trustees before the appointment of a receiver. The bringing of this suit by the receiver is in law a ratification of his action in this particular, if ratification is necessary, there being no evidence that his action was ever objected to by the corporation, or by any member of the board of trustees. We are of opinion that the instructions to the jury on this part of the case, as applied to the evidence, were sufficient.*

All the requests for instructions, and all the instructions given

---

* These instructions were, in substance, as follows: " A bond, like this, is a contract between two or more parties, and to make it a valid contract there must be what the law calls a delivery of it. There is no definition, that I know of, — a brief definition that can be cited of what a delivery is. But it ordinarily means that the contract shall have passed from the promisor into the possession and control of the promisee, or of somebody who holds it for him. Now it is sometimes said in books, that where a contract is made for the benefit of A. B., as, for instance, this bond for the benefit of this bank, and the bond is found in the possession of the bank, and there is no other evidence about it, delivery would be presumed. Acceptance would be presumed. In the case supposed here is a paper which is manifestly for the benefit of the bank, intended to give the bank security. It is found in the possession of the bank, but the parties are dead or gone away, and no evidence is produced and nothing can be produced, and there is no acceptance minuted upon it and no record of it; the courts say, under such circumstances, acceptance may be presumed, — delivery and acceptance may be presumed, — upon the theory that that is the most natural view to take of it. The instrument has gone out of the hands of those who signed it and who are to be bound by it, and it is in the hands of the party who is to be benefited by it, and if nothing else appears, why, the natural view to take of it is that it is properly there; that the bank has not stolen it or got it without right, but that it has by the ordinary course of things got into the hands of the bank for whose benefit it was intended. . . . The bond in suit must have been executed or delivered to an officer of the bank in order to be a valid instrument. It makes no difference that this officer was treasurer whose bond it was. If the jury are satisfied by the fair preponderance of the evidence that the instrument in suit, after its execution by the signers, was retained by Gerald as treasurer of the bank, there is a sufficient delivery."

in regard to the effect of an agreement that the treasurer's father should sign as surety were rendered immaterial by the finding of the jury that there was no such agreement.

The exception to the refusal to rule that, upon all the evidence, the jury were not entitled to find that the instrument was ever delivered as a common law bond, and the exception to the admission in evidence of the attested copy of the bond sent by the treasurer to the commissioners of savings banks, have not been argued, and we treat them as waived. No question was raised in regard to the right of the receiver to sue in his own name.

We discover no error in the proceedings at the trial.

*Exceptions overruled.*