## COMMONWEALTH *vs.* LEWIS WARNER.

Hampshire.    May 16, 1899. — June 29, 1899.

Present: HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Embezzlement — Indictment — Statute — " Incorporated Bank" — Savings Bank — Examination of Jurors — Evidence — Exceptions — Specifications — Trial.*

Under Pub. Sts. c. 203, § 44, an allegation in an indictment under § 41, against an officer of a savings bank for embezzlement of " a great quantity of money, to wit, the sum of five thousand dollars of the property of the said savings bank," is sufficient.

An indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank, for embezzlement of a sum of money, rightly contains an averment that the money was in the possession of the bank; and in an averment that "by virtue of his said office" he received into his possession the money stolen, the words quoted may be rejected as surplusage.

The tèrm "incorporated bank" in Pub. Sts. c. 203, § 41, relating to embezzlement of its funds by an officer or employee, applies to a savings bank.

At the trial of an indictment under Pub. Sts. c. 203, § 41, for embezzlement, against the treasurer of a savings bank, who was also the president of a national bank, both banks doing business in the same rooms, in examining jurors, the defendant is not entitled to have them asked whether, at the time of the alleged offence, they were related to any person who was a depositor in either of the banks, or a stockholder in the national bank; whether they were stockholders in any corporation which was a depositor in either bank, or a stockholder in the national bank; and whether their father, mother, brother, sister, uncle, aunt, wife, or child was a depositor in the savings bank.

At the trial of an indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank for embezzlement, the records of the bank contained in a book produced by a person who had been appointed receiver of the bank, and found by him in the rooms occupied by the bank, showing its incorporation, and that the defendant, in whose handwriting they were, was duly elected treasurer of the bank, are sufficiently proved and rightly admitted in evidence; the fact that some of them were signed by him as secretary and others as clerk is immaterial; and a witness is rightly permitted to testify that the defendant produced this book of records at the meetings of the trustees of the bank prior to a certain date.

An exception alleged at the trial of an indictment to the admission of evidence under a count, which with all the evidence pertaining to it is taken from the jury, is immaterial.

At the trial of an indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank for embezzlement, no exception lies to the admission in evidence of a check signed by him as such treasurer "payable to order of loan C. E. S.," and to evidence showing that no money was received on it by C. S. of the city in which the bank was located, or by C. E. S. of a neighboring town, who, so far as known, were the only persons of that name in the county, on the ground that it did not appear beyond the possibility of a doubt that some other person of that name might not have received the money.

In this case, which was an indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank for embezzlement, the jury might consider that there was a large deficiency in the assets of the bank; that the defendant was the treasurer for many years, and his sworn returns to the commissioners of savings banks were grossly false; that he fled when he heard that the examiner of the national bank, of which he was president, whose business was done in the same rooms as that of the savings bank, and that a commissioner of savings banks were both in the banking rooms to examine the two banks; that he went to a distant State and lived there under an assumed name for several months, until he was discovered and arrested; and that when he went away he left a written statement that the, loss was more than $300,000, in which he admitted that he was guilty of fraud, intimated flight and suicide, and prayed God's mercy on his soul; and these facts, considered in connection with express testimony in regard to particular transactions, which tended to show that the transactions were irregular, were proper to supply deficiencies in the proof as to these transactions, and to convince the jury that they were fraudulent.

Upon a bill of exceptions alleged at the trial of a criminal case, containing ninety-six separate exceptions, an exception having been taken to every material piece of evidence introduced, and a ruling requested under each count and each specification that there was no evidence to warrant a verdict upon it against the

defendant, who introduces no evidence and submits the case to the jury without argument, nearly all of the exceptions being general, with no statement of the grounds of the objection, he should be held very strictly to show any error on which he relies, and no inferences will be drawn in his favor.

At the trial of an indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank for embezzlement, a witness who has been employed by the receiver upon the books of the bank in ascertaining its condition is properly allowed to testify to the results of his examination, the books being in court for the purpose of verification, if his testimony is doubted.

That some of the checks put in evidence at the trial of an indictment under Pub. Sts. c. 203, § 41, against the treasurer of a savings bank for embezzlement, did not correspond exactly to the specifications filed by the government is of no consequence, so long as there was enough to establish their identity with the checks intended.

It is within the discretion of the judge, at the trial of a criminal case, to admit evidence entirely outside of the specifications filed by the government, if it is pertinent to the indictment and the defendant is given a sufficient opportunity to answer it.

The defendant in an indictment under Pub. Sts. c. 203, § 41, for embezzlement, is not entitled to have the jury instructed as to the effect of the evidence introduced under each specification filed by the government, but all the evidence bearing upon each count of the indictment is to be considered on the question whether the defendant is guilty of the charge set forth in the count.

INDICTMENT, under Pub. Sts. c. 203, § 41, for embezzlement of property of the Hampshire Savings Bank. At the trial in the Superior Court, before *Fessenden,* J., the jury returned a verdict of guilty ; and the defendant alleged exceptions, which appear in the opinion.

*W. H. Brooks & W. Hamilton,* for the defendant, submitted the case on a brief.

*J. C. Hammond,* District Attorney, for the Commonwealth.

KNOWLTON, J.   The motion to quash and dismiss the indictment was rightly overruled.   The property alleged to have been embezzled and stolen by the defendant is described in each of the counts of the indictment on which the defendant was convicted as " a great quantity of money, to wit, the sum of five thousand dollars of the property of the said Hampshire Savings Bank."   It is contended that the indictment is insufficient, because it fails to make an express statement of the value of the money.   Ordinarily, in indictments for larceny and other similar offences, the value of the property is stated in terms, out of abundant caution, as well when the property is money as when it is something else.   But by the Pub. Sts. c. 203, § 44, it is provided that in prosecutions like the present " it shall be

sufficient to allege generally in the indictment an embezzlement, fraudulent conversion, or taking with such intent of money to a certain amount, without specifying any particulars of such embezzlement," etc.   This provision seems to imply that in this class of indictments the pleader may avail himself of the fact, of common knowledge, which is well recognized in law, that money has value.   This section goes on to say that " it shall be sufficient to maintain the charge in the indictment, and shall not be deemed a variance if it is proved that any bullion, money, notes, bank note, check, draft, bill of exchange, or other security for money of such person, bank, incorporated company, partnership, city, town, or county, of whatever amount, was fraudulently embezzled, converted, or taken . . . within said period of six months."   This provision shows that the amount in value is immaterial in reference to conviction, and is therefore unimportant as a part of the description of the offence.   In three cases of conviction of obtaining money by false pretences, the money obtained was described as the sum of a certain number of dollars, giving the number, although this question was not considered by the court.   *Commonwealth* v. *Coe*, 115 Mass. 481.   *Commonwealth* v. *Howe*, 132 Mass. 250.   *Commonwealth* v. *Dunleay*, 153 Mass. 330.   In *Commonwealth* v. *Hussey*, 111 Mass. 432, it was said that, in cases of notes current as money, amount and value are ordinarily synonymous terms.   This section was intended to relieve the pleader from technical requirements not needed for the protection of the accused.   It gives to a defendant no new information to add to the statement of the taking of a sum of money that it is of the value which the law puts upon it. We are of opinion that under the provisions of this section this allegation was sufficient.

This indictment is brought under the Pub. Sts. c. 203, § 41, which treats as guilty of larceny any officer of an incorporated bank " who fraudulently converts to his own use . . . any bullion, money, note, bill, or other security for money belonging to and in possession of such bank, . . . whether intrusted with the custody thereof or not," etc.   The indictment rightly contains an averment that the money was in the possession of the savings bank.   This statute makes it immaterial whether the accused was intrusted with the custody thereof or not, and

whether the offence, according to ordinary rules, would be deemed embezzlement or larceny. *Commonwealth* v. *Tenney*, 97 Mass. 50, 57, 58. There was no material error in the averment that, by virtue of his said office of treasurer, he did "have, receive, and take into his possession a great quantity of money, to wit, the sum of five thousand dollars," etc. The words "by virtue of his said office of treasurer" may be rejected as surplusage; for the statutory offence would be committed alike whether the money came rightfully into his possession by virtue of his office and was then fraudulently converted, or whether it was feloniously taken from the vault of the bank for no other purpose than to steal it. It was therefore unnecessary to allege anything in regard to the defendant's personal possession or custody when the offence was committed, and it is of no consequence whether the averment is true or not.

Another question, which arises upon the form of the indictment and upon the defendant's request to direct a verdict in his favor, is whether the term "incorporated bank" in the statute referred to applies to savings banks. This question has been argued by the District Attorney, but not by the counsel for the defendant. The words "an incorporated bank" are broad and comprehensive. They have been held to apply to national banks incorporated under the statutes of the United States. *Commonwealth* v. *Barry*, 116 Mass. 1. *Commonwealth* v. *Tenney*, 97 Mass. 50. In *Commonwealth* v. *Shepard*, 1 Allen, 575, they are assumed by this court to include a savings bank. The word "bank" is commonly used in referring to savings banks as well in opinions of the courts as in conversation. *McCarthy* v. *Provident Institution for Savings*, 159 Mass. 527. *North Brookfield Savings Bank* v. *Flanders*, 161 Mass. 335. *Johnson* v. *Gerald*, 169 Mass. 500. In the opinion in *Commonwealth* v. *Pratt*, 137 Mass. 98, is a discussion indicating that savings banks are not included in the provisions of this section. But in that case the court was careful to say that it did not determine the question, and it put its decision on other grounds. Even in this opinion the savings bank under consideration is repeatedly referred to by no other designation than "the bank." In the General Statutes of Massachusetts the laws pertaining to savings banks are found with those governing banks of issue in chapter 57, which is

entitled, " Of Banks and Banking." The reasons for the legis-lation are as applicable to savings banks as to banks of issue. Notwithstanding this dictum in *Commonwealth* v. *Pratt*, we are of opinion that the words " an incorporated bank " used in this section, apply to savings banks as well as to other banks.

In examining jurors the court rightly refused to put to them the third, fourth, and seventh interrogatories suggested by the defendant's counsel.* The examination of jurors as to interest or bias beyond the inquiries expressly provided for by the statute is left to the discretion of the presiding judge. *Commonwealth* v. *Poissón*, 157 Mass. 510. *Commonwealth* v. *Thompson*, 159 Mass. 56. Each of the questions which the judge declined to put in the present case related to matters about which the jurors could not be supposed to have knowledge.

The records to prove the organization of the bank were sufficiently proved and were rightly admitted.† So also were the records to show that the defendant was the duly elected treasurer of the bank. They were in the handwriting of the defendant, and in addition to their official character they were competent as his admission of the truth of the facts stated in them. That some of them were signed by him as secretary and others as clerk is immaterial. Until the enactment of the St. 1876, c. 203, the officer acting as clerk of a savings bank might be called secretary as properly as clerk. Ordinarily, in the absence of an express provision of a statute, either name is proper for a recording officer. *Mack* v. *New York, New Haven, & Hartford Railroad*, 172 Mass. 185. In the records of this

---

* These interrogatories were as follows:

" 3. Are you related to any person who at the time the offences charged in this indictment are alleged to have been committed was a depositor in either of said banks, or a stockholder in said National Bank?

" 4. Were you at the time the offences charged in this indictment are alleged to have been committed a stockholder in any corporation which was a depositor in either of said banks, or a stockholder in said National Bank? . . .

" 7. Was your father, mother, brother, sister, aunt or uncle, wife or child, at the time the offences charged in this indictment are alleged to have been committed, a depositor in the Hampshire Savings Bank? "

† These records were contained in a book produced by a person who had been appointed receiver of the bank, and found by him in the rooms occupied by the bank.

savings bank the recording officer is called the secretary up to the time of the meeting in May, 1898, and in the record of that meeting. Afterwards, in accordance with the change in the statute made a little more than a year before that time, he is called clerk.

The witness Kimball was rightly permitted to testify that the defendant produced this book of records at the meeting of the trustees prior to May, 1898. His answer tended to identify the book.

The exception to the admission of the check whose stub was dated September 23, 1893, is immaterial, for the check evidently was admitted upon the count charging the crime nearest to it in date, and that count, with all the evidence pertaining to it, was taken from the jury. The defendant excepted to the admission of a check signed by him as treasurer of the bank " payable to order of loan C. E. Stevens," and to evidence showing that no money was received on it by C. E. Stevens of Northampton or by C. E. Stevens of Ware, who, so far as known, were the only persons of that name in Hampshire County, because it did not appear beyond the possibility of a doubt that some other person of that name might not have received the money. There were many similar exceptions. In regard to all of them it is enough to say that the evidence was competent. The jury might well believe that the persons who testified that they did not receive the money were the persons referred to in the checks. As bearing upon these questions and upon many other questions in the case, the jury might consider that there was a very large deficiency in the assets of the bank ; that the defendant was the treasurer for many years, and that his sworn returns to the commissioners of savings banks were grossly false ; that he fled when he heard that the examiner of the national bank of which he was president, whose business was done in the same rooms as that of the savings bank, and that a commissioner of savings banks were both in the banking rooms to examine the two banks ; that he went to a distant State and lived there under an assumed name for several months, until he was discovered and arrested ; that when he went away he left a written statement that the loss was more than $300,000, in which he admitted that he was guilty of fraud, intimated flight and suicide,

and prayed God's mercy on his soul. These facts, considered in connection with express testimony in regard to particular transactions which tended to show that the transactions were irregular, were proper to supply deficiencies in the proof as to these transactions, and to convince the jury that they were fraudulent. It is not necessary to consider all the exceptions in detail. In this case it can be said more emphatically than it was said in *Commonwealth* v. *O'Brien,* 172 Mass. 248, that the trial " was obscured by an excessive number of objections and requests for rulings." The method adopted by the defendant's counsel at the trial does not seem adapted to the promotion of a proper administration of justice, and is not to be commended. The bill before us contains ninety-six separate exceptions. An exception was taken to every material piece of evidence introduced in the case, and a ruling was requested under each count and each specification that there was no. evidence to warrant a verdict upon it against the defendant. No evidence was introduced by the defendant, and the case was submitted to the jury without argument. Nearly all of the exceptions were general, with no statement of the grounds of the objection. Upon such a bill of exceptions the excepting party should be held very strictly to show any error on which he relies, and no inferences will be drawn in his favor.

The witness Prince, who had been employed by the receivers upon the books of the bank in ascertaining its condition, was allowed to answer certain questions in reference to his examination of the books and papers, as, " What was the aggregate of the deposits of the bank?" as shown by a trial balance which was taken, and, " What was the amount of the assets?" A general exception was taken to the testimony. It is now said that the books were the best evidence. We understand that the books of the bank were in court. Particular reference is made in the testimony to the journal and ledger as there, as well as to the book of records. The witness said, " I have in my possession the deposit ledgers purporting to indicate the deposits in the bank by different people." We understand this to mean that he had them there, ready to be exhibited to the jury. He said he had put together the aggregate of the deposits. Referring to the trial balance, he said, " I have the figures." He also said,

" I went through all the assets and inventoried and listed all that came to my attention or knowledge, and I made a footing of all the assets." This seems to have been the common case of presenting to a jury the contents of books and the results which books show, by producing the books and calling a witness who has examined them and made computations to give the results of his examination, with the means of verifying them if they are doubted. If the defendant's counsel had objected that the contents of the books could not be put in evidence without exhibiting the books, the ruling undoubtedly would have been in his favor. There is nothing in the bill of exceptions to indicate that he sought to examine the books and figures, or to verify or discredit the testimony of the witness in regard to the contents of the books. The testimony indicates that some of the facts which show the aggregate of deposits were found in the depositors' pass books in which entries had been made by the defendant for the bank. The witness said that he had examined and verified these books. The bill of exceptions does not show that these books, so far as they were material in correcting the entries on the regular books of the bank, were not retained in the hands of the receivers and brought into court for the examination of the defendant's counsel and the jury. As a matter of convenience, it is always proper to allow a witness who has made extended computations from entries in books to state the result of his computations when the books are produced. If the computations are questioned, they go for nothing unless they are supported by the books. This exception must be overruled.

The defendant contends that some of the checks did not correspond exactly to the specifications. But this is of no consequence, so long as there was enough to establish their identity with the checks intended. Pub. Sts. c. 214, § 26. *Commonwealth* v. *Hall*, 97 Mass. 570. Moreover, the specifications filed are merely for the information and convenience of the defendant, and it is within the discretion of the presiding judge to admit evidence which is entirely outside of the specifications if it is pertinent to the indictment, and if the defendant is given a sufficient opportunity to answer it.

The defendant was not entitled to have the jury instructed as to the effect of the evidence introduced under each specification.

All the evidence bearing upon each count of the indictment was to be considered on the question whether the defendant was guilty of the charge set forth in the count. There were specific matters testified to under each count on which the defendant was found guilty, which, in connection with the other evidence, tend to show a fraudulent conversion as alleged.

There was no error in the charge. The other exceptions need not be considered.         *Exceptions overruled.*