DYECRAFTSMEN, INC. *vs.* MURRAY L. FEINBERG & others, trustees, & others.

Bristol.    April 7, 1971. — May 11, 1971.

Present: TAURO, C.J., SPIEGEL, REARDON, QUIRICO, & BRAUCHER, JJ.

*Evidence,* Business record, Judicial discretion, Relevancy and materiality, Of prospective profits. *Pleading, Civil,* Declaration. *Landlord and Tenant,* Quiet enjoyment, Services furnished by landlord, Trespass, Eviction. *Trespass. Practice, Civil,* Requests, rulings and instructions. *Damages,* For breach of contract to furnish steam.

At the trial of an action by a tenant at will against its landlords, from whom the plaintiff leased premises in which it operated a commercial dyeing business using processed steam purchased from the defendants, where there was evidence of an interruption of steam several times during a certain month and complete cessation thereof at the end of that month, requiring the plaintiff to immediately move its operation to another plant, there was no error in the admission in evidence of a summary of the plaintiff's day to day production records for a period following the move, as business records under G. L. c. 233, § 78, [487]; of a transcription of sales records of the plaintiff present in the court room, as a matter of convenience [487]; of the plaintiff's extra moving expenses because of the hurried nature of the move and of its expenses in hiring employees of a separate entity to set up and start the plaintiff's operation anew [487–488]; of a decline in the plaintiff's sales after the move [488]; and of advertisements of the defendants as to the availability of steam, in order to impeach testimony of a defendant [488].

In an action for trespass, a reference in the declaration to the premises involved as "located at 349 Lincoln Street, Hingham, Massachusetts," and rented to the plaintiff by the defendants was a sufficient description under G. L. c. 231, § 10. [488–489]

Warranted findings in actions of contract and tort by a tenant at will against its landlords, that an essential part of the plaintiff's tenancy was the furnishing of processed steam to its commercial dyeing business by the defendants, that the defendants agreed to furnish steam but repudiated and broke the agreement, that without advance notice or permission they entered the rented premises and shut off the steam by padlocking the steam valve, and that the plaintiff promptly moved out and suffered damages in the process, supported verdicts for the plaintiff on counts of its declaration for breaches by the defendants of their implied covenant of quiet enjoyment and of their express contract to supply steam, for trespass, and for constructive eviction. [489–490]

There was no error at a trial in the denial of requests for instructions to the jury which were confusing, misleading, or incomprehensible, which

singled out for excessive emphasis particular aspects of the evidence, which were given by the judge in substance, or which would in effect have directed a verdict. [490]

The actual expense incurred by a tenant as a result of breach by its landlords of a covenant to furnish steam to the tenant's premises was the proper measure of the tenant's damages for the breach, not "the difference between the value of the leasehold interest with the covenant unbroken and its value with the covenant broken." [490]

CONTRACT. TORT. Writs in the Superior Court dated April 1, 1964.

The actions were tried before *Taveira*, J.

*John P. White, Jr.*, & *Nelson S. Baker*, for the defendants, submitted a brief.

*Morris M. Goldings* for the plaintiff.

BRAUCHER, J. These actions of contract and tort are before us on the defendants' exceptions after jury verdicts for the plaintiff on each of four counts for the same cause of action: breach of covenant of quiet enjoyment, breach of contract to supply steam, trespass, and constructive eviction. The exceptions relate to evidence admitted on behalf of the plaintiff, to the denial of the defendants' motions for directed verdicts, and to denial of the defendants' requests for instructions.

There was evidence of the following facts. The plaintiff operated a commercial dyeing business, using large quantities of processed steam, in the Hingham Industrial Center from 1951 until December, 1963, as a tenant at will on a monthly basis. The plaintiff paid separately for rent, steam, electricity, water, and other services. The charge for steam exceeded the charge for rent. After September 1, 1963, the defendants were the landlords. They tried, without success, to persuade the plaintiff to enter into a lease, and refused to replace or supplement their steam boilers, which were obsolete, unless the plaintiff agreed to a lease. In December, 1963, the provision of steam was interrupted several times, and on December 24, 1963, it ceased completely. On that day the defendants notified the plaintiff that they would no longer provide steam, and an employee of the defendants entered the plaintiff's premises and pad-

locked the steam valve. On the morning of December 26, 1963, one of the defendants said to an officer of the plaintiff, "Well, now are you ready to listen to reason?" On December 26, 1963, the plaintiff began the removal of its operation to another plant. The plaintiff was completely out of production for nine days, and its production was seriously impaired for several weeks. It incurred extraordinary moving expenses and lost profits. The jury returned a verdict for the plaintiff for $75,000 on each count.

1. *Admission of evidence.* Exhibit 8, summarizing the plaintiff's day to day production from January, 1963, to February, 1964, was properly admitted in evidence as a group of business records under G. L. c. 233, § 78, as appearing in St. 1954, c. 442, § 1. *Kaplan* v. *Gross*, 223 Mass. 152, 154–155. *Sawyer & Co.* v. *Southern Pac. Co.* 354 Mass. 481, 484.

Exhibit 10, an analysis of the plaintiff's gross monthly sales for the years 1962, 1963 and 1964 prepared under the direction of the plaintiff's sales manager, was not a record kept in the ordinary course of business, but was made at the request of the plaintiff's attorney as a transcription of records present in the court room. The exhibit was admissible, in the discretion of the judge, as a matter of convenience. *Commonwealth* v. *Warner*, 173 Mass. 541, 548–549. *Cornell-Andrews Smelting Co.* v. *Boston & Providence R.R.* 215 Mass. 381, 390–391. *Greenberg* v. *Weisman*, 345 Mass. 700, 703.

The treasurer of the plaintiff testified as to extra moving expenses incurred because of the hurried nature of the move. He was permitted to describe the actual move and then to describe a move "under normal operations with 30 days notice." The defendants argue that this testimony was "pure conjecture." We do not so read it. The judge struck a portion of the testimony as speculative, but the balance explained that if machines were moved one at a time the others could remain in operation, and that much of the yarn on hand could be used up during the thirty days so that it would not have to be moved. Such facts may be

obvious, and the evidence may have been unnecessary, but it seems helpful and was properly admitted.

The same witness testified to expense incurred in setting up and getting the operation going after the move. The defendants argue that this evidence was not admissible because the plaintiff planned to incur the expense as part of an expansion move apart from any constructive eviction. This argument is contrary to the testimony that beginning on December 26, 1963, additional duties were assigned to employees of a separate entity, which billed the plaintiff for them. Whether that testimony was to be believed was for the jury.

The plaintiff's sales manager testified to the total amount of a decline in sales to named firms from 1963 to 1964. The defendants argue that the evidence should have been excluded because no causal connection was shown with the activities of the defendants. The witness had testified that it was the plaintiff's practice to deliver dyed yarn on schedules of one to three weeks, and that after December 26, 1963, he received communications from customers about delays. It was for the jury to decide whether a causal connection was to be inferred. Comparative earnings are an appropriate means of proving lost profits, and mathematical certainty is not required. *Rombola* v. *Cosindas*, 351 Mass. 382, 385. *Dalton* v. *Demos Bros. Gen. Contractors, Inc.* 334 Mass. 377, 378–379.

The defendants argue that their advertisements of the availability of steam early in November, 1963, were immaterial. The advertisements were properly admitted to impeach the testimony of one of the defendants that there were boiler difficulties during this period.

The exceptions relating to the admission of evidence are overruled because the rulings were right. If any one of the rulings had been erroneous, however, we doubt that the error would have been sufficiently material to be prejudicial.

2. *Motions for directed verdicts.* The defendants argue that a verdict in their favor should have been directed on the trespass count for lack of a sufficient description of the

premises in the declaration to comply with G. L. (Ter. Ed.) c. 231, § 10. The declaration referred to premises "located at 349 Lincoln Street, Hingham, Massachusetts," and rented to the plaintiff by the defendants. There was no doubt or confusion as to what premises were meant, and the description was a good description by name. *Sawyer* v. *Ryan,* 13 Met. 144, 148. *Leatherbee* v. *Barrett,* 152 Mass. 532, 533.

The remaining argument as to the motions for directed verdicts seems to assume, contrary to law, that the plaintiff is bound by the testimony of one of the defendants, who was called as a witness by the plaintiff. The question presented by the motion was not the weight of the evidence but whether there was any evidence that, if viewed in the light most favorable to the plaintiff, would support its cause of action. *Howes* v. *Kelman,* 326 Mass. 696, 697, and cases cited.

From the evidence, summarized above, the jury could have found the following ultimate facts. The provision of steam was an essential part of the plaintiff's tenancy. The defendants agreed to furnish steam, but repudiated and broke the agreement. Without advance notice they entered the rented premises without the plaintiff's permission and shut off the steam by padlocking the steam valve. The plaintiff promptly moved out, and in the process suffered damages.

Such findings support all four of the counts in the plaintiff's declarations. They establish a breach of the defendants' implied contract of quiet enjoyment. *Brown* v. *Holyoke Water Power Co.* 152 Mass. 463, 464. They establish a breach of the express contract to supply steam. *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424, 427–428. Trespass is made out. Finally, the failure to furnish steam, if it goes to the essence of what the landlord is to provide, is a constructive eviction if the tenant removes from the premises. *Brown* v. *Holyoke Water Power Co., supra. Charles E. Burt, Inc.* v. *Seven Grand Corp.* 340 Mass. 124, 127. In the *Banister* case, *supra,* at 426, there was no eviction because the breach did not make the

premises untenantable, and the tenant continued to occupy notwithstanding the breach.

There was no error in denying the defendants' motions for directed verdicts.

3. *Requests for jury instructions.* The defendants presented twenty-five requests for instructions and excepted to the judge's denial of seven. Request no. 5 in the tort case was confusing and misleading. Requests no. 10 and 11 singled out for excessive emphasis particular aspects of the evidence. Request no. 15 was given by the judge in substance. Request no. 16 was incomprehensible. Request no. 17 would in effect have directed a verdict for the defendants if any steam was furnished on December 26, 1963, notwithstanding the defendants' announced intention to supply no more.

Request no. 3 in the contract case presented an issue of law. It would have limited the plaintiff's damages to "the difference between the value of the leasehold interest with the covenant [to furnish steam] unbroken and its value with the covenant broken." In support of such a limitation the defendants cite *A. W. Banister Co.* v. *P. J. W. Moodie Lumber Corp.* 286 Mass. 424. In that case the court said that such a measure had often been held proper "where the tenant could do nothing or in fact did nothing to repair the damage caused by the breach of covenant." But that rule of damages was held inapplicable to the *Banister* case because the tenant incurred additional expense as a consequence of the breach and was entitled to recover that expense as damages. *Id.* at 427–428. Similarly in the present case, as the judge charged, the plaintiff was to "be placed in the same position . . . [it] would have been in if the contract had been performed," unless it is proved "that the plaintiff did not make a reasonable effort to reduce . . . [its] damages."

The judge's charge, taken as a whole, fairly presented the case to the jury, and there was no error in the denial of the defendants' requests for instructions.

*Exceptions overruled.*